## CLEVELAND CITY RY. CO. v. CITY OF CLEVELAND.

## CLEVELAND ELECTRIC RY. CO. v. SAME.

(Circuit Court, N. D. Ohio, E. D.     May 16, 1899.)

### Nos. 5,839 and 5,840.

1. CONSTITUTIONAL LAW — IMPAIRMENT OF CONTRACTS — ORDINANCES GRANTING STREET-RAILROAD FRANCHISES.

City ordinances making grants of franchises to street-railroad companies on specified conditions, when accepted by the companies, constitute contracts, which cannot be annulled or amended except by consent of both parties, and which are protected from impairment by the fourteenth constitutional amendment.

2. EQUITY JURISDICTION — RESTRAINING ENFORCEMENT OF UNCONSTITUTIONAL ORDINANCE.

A federal court of equity may grant relief by injunction against a city ordinance which impairs the contract rights of complainant, or deprives him of his property without due process of law.

3. STREET RAILROADS — RIGHT OF MUNICIPALITY TO FIX RATES OF FARES.

The statutes of Ohio confer power upon municipalities to determine the conditions of the grant of a franchise to a street-railroad company, including the rates of fare to be charged, but no power to thereafter prescribe rates of fare; and where the grant itself fixes the rate of fare a reserved right of regulation does not authorize the municipality to thereafter change it during the life of the grant.

4. CONSTITUTIONAL LAW — IMPAIRMENT OF OBLIGATION OF CONTRACTS — ORDINANCE CHANGING RATES OF FARE ON STREET RAILROADS.

A city, in granting franchises to two certain street-railroad companies, fixed the rates of fare to be charged, reserving the right to increase or diminish such rates, as it might deem justifiable and expedient. Afterwards, by different ordinances, it granted additional franchises to each company, expiring with the original franchise, to build extensions, lay additional tracks, or to change the motive power. It imposed conditions to each of such additional grants, which were accepted by the respective companies, in the way of requiring street paving and repairing, or the furnishing of increased car service, to which the companies were not before subject. Such ordinances also made changes in the rates of fare by providing that but a single fare, at the rate then charged, should be charged for passage between any two points on either the original lines or their extensions, and by requiring the companies to sell tickets at a reduced rate. As to one of the companies, which, under the ordinance containing the reservation, had the right to, and did, charge two fares for passage over the entire length of its line, a subsequent ordinance granting it the right to lay a double track, and to maintain it during the life of its original franchise, required the carriage of passengers over the entire line for a single fare at the rate then charged, and such company was subsequently granted the right to change its motive power from horses to electricity, which it did, at a large expense. Each of said companies subsequently consolidated with a number of other companies, as to whom no power to change the rates of fare had been reserved by the city, their original lines, to which the reservations in regard to changing rates of fare applied, thus becoming parts of two several consolidated systems, each containing many miles of road, operated together. These consolidations were consented to by the city, the consents containing provisos, accepted by the consolidated companies, requiring transfers to be given, or through cars run, so that a single rate of fare or ticket at the rate then charged should entitle a passenger to ride over the lines of any two of the constituent companies, whereas they were before entitled to charge separate fares over each line. None of such legislation of the city subsequent to that granting the two original franchises mentioned contained any reservation of the right to make future changes in rates of fare. *Held*, that such subsequent legisla-

94 F.—25

tion, and its acceptance by the companies, operated as a repeal of the provisions of the original grants reserving the right to change the rates of fare on the original lines of the two companies to which they applied, or constituted new contracts with such companies and their successors, which the city could not impair during the life of their franchises; and that an ordinance passed by the city requiring the consolidated companies to reduce the rates of fare on such original lines, aside from being impracticable in operation, since each of such lines had become a part of a larger system, operated together as a whole, was unconstitutional and void as an impairment of the contracts made by such subsequent ordinances.

5. SAME—MODIFICATION OF GRANT BY CITY —VALIDITY UNDER OHIO STATUTE.
      Rev. St. Ohio, § 2502, providing that, after a grant or renewal of a grant is made by a municipal corporation, it shall not, during the term of such grant or renewal, release the grantee from any obligation or liability imposed by the terms of such grant or renewal, does not prohibit a city making a grant of a franchise to a street-railroad company, in which it reserves the right to change the rates of fare to be charged, from thereafter modifying such contract on sufficient consideration.

These are suits in equity by the Cleveland City Railway Company and the Cleveland Electric Railway Company, respectively, against the city of Cleveland, to enjoin the enforcement of an ordinance reducing rates of fare on portions of complainants' lines, on the ground of its unconstitutionality. Heard on application for preliminary injunction.

The complainants have instituted this suit to seek relief through a decree declaring void certain ordinances passed by the city of Cleveland in October, 1898, known as "Low Fare Ordinances." By the provisions of these two ordinances, the city undertakes to compel each of the two complainants to carry passengers over certain designated portions of the routes operated by them at a cash fare of 4 cents, and to sell tickets good for one passage at the rate of seven tickets for 25 cents. Each of the complainants, in its bill of complaint, contends that the ordinances so requiring a reduction of fare are laws of the state of Ohio, and in impairment of their contract rights, and that the rate of fare sought to be established is so unreasonably low that, if put into practical operation, it would amount to the taking of the complainants' property without due process of law. Upon the filing of the bills, temporary restraining orders were issued, restraining the defendant from putting these ordinances into operation, and subsequently the cases were heard by the court upon an application, in each case, for a temporary injunction; and the cases have been fully and elaborately argued by the respective counsel, both orally and by brief. As respects the Cleveland City Railway Company, the ordinance, the operation of which it is sought to enjoin, requires the company to operate what is known as the "Kinsman Street Line" at the rate of fare therein prescribed; and as to the Cleveland Electric Railway Company the ordinance in question is made applicable to that which is known as the "Euclid Avenue Line," and all extensions thereof. Both of the companies, complainants herein, are operating under various ordinances passed in the common council of the city of Cleveland, prescribing the terms and conditions upon which the various railroad routes may be operated for stated periods of time. Both of the complainant companies, at the date of the passage of the ordinance in question, were operating under such grants from the city, none of which had expired.

A brief statement of the corporate history of each of these complainants, and of the various ordinances under which they were operating their lines of railway, is necessary to understand the precise question involved in this motion. The complainant the Cleveland City Railway Company is a corporation duly organized under the laws of the state of Ohio, having a capital stock of $8,000,000, of which $7,600,000 have been issued, and a bonded indebtedness, secured by mortgage upon a portion of its railroad line, of $2,026,000, payable in 11 years, with 5 per cent. interest, payable semiannually. This company was formed by the consolidation of two existing railway companies in the city of Cleveland,

each of which owned and was operating lines of street railway under ordinances passed by the municipality; and by the terms of such consolidation, and by the statutes of Ohio, became possessed of the rights, franchises, and privileges theretofore possessed by each of the constituent companies. The Woodland Avenue & West Side Street-Railroad Company and the Cleveland City Cable-Railway Company were the constituent companies entering into such consolidation. The said the Woodland Avenue & West Side Street-Railroad Company, one of the constituent companies forming such complainant, was organized in 1885, and was a consolidated company formed by the consolidation of the West Side Street-Railroad Company and the Woodland Avenue Railway Company; and the said the Woodland Avenue Railway Company, which was consolidated, was the successor, by purchase, of the Kinsman Street Railroad Company, having become such about the year 1880. By the terms of the consolidation, in 1885, of the said the Woodland Avenue Railway Company and the West Side Street-Railroad Company, said consolidated company, known as the Woodland Avenue & West Side Street-Railroad Company, became vested with all the rights and privileges of each of said constituent companies. The Cleveland City Cable-Railway Company was the successor and owner, by purchase, of all of the property and franchises of the St. Clair Street Railroad Company and the Superior Street Railroad Company, each of which companies was a corporation under the laws of the state of Ohio, owning and operating lines of street railway in the city of Cleveland under grants from the city. By virtue of the consolidation of the Woodland Avenue & West Side Street-Railroad Company and the said the Cleveland City Cable-Railway Company, in 1893, the complainant company the Cleveland City Railway Company became vested with all of the rights, privileges, and franchises of the said constituent companies above mentioned. In 1885, when the Woodland Avenue & West Side Street-Railroad Company was organized, the constituent companies before such consolidation were independent lines of railway, one operating chiefly upon the west side of the Cuyahoga river, and the other upon the east side, running to the northeasterly portion of the city. Each was acting under independent franchises and contracts with the city of Cleveland. There was no exchange of traffic by way of transfer, and each company was charging a fare of five cents over its line. At the time of this consolidation, the West Side Street-Railroad Company had the right, by ordinance, to continue the operation of its road for 25 years from February, 1883, and to charge a cash fare of five cents for each passenger carried. The Woodland Avenue Railway Company was operating its lines of road under several grants from the city; among others, a grant made in 1879, relating to the operation of cars from Water street, through Superior and Ontario streets and Woodland avenue, to Madison avenue. This grant provided, among other things, that the company should not charge more than five cents cash fare, and in said ordinance was reserved the right to the municipal council to thereafter increase or diminish the rate of fare as it might deem wise and expedient; this being the ordinance known as the "Kinsman Street Ordinance," and under which the defendant claims the right to put into operation the ordinance reducing the fare, set up in the complainant's bill. In 1883, another ordinance was passed, granting the Woodland Avenue Railway Company the right to extend and construct its line of railway upon Woodland avenue from the crossing of the Cleveland & Pittsburgh Railroad Company's tracks to Corwin street; and in this ordinance provision was made for the operation of cars over the entire line, including the line referred to in the ordinance of 1879; and the company agreed that during the continuance of said grant it would charge but one fare of five cents over its entire line, including said extension. In 1885, upon the consolidation forming the Woodland Avenue & West Side Street-Railroad Company, the city council passed an ordinance entitled "An ordinance to fix the terms and conditions upon which the railway tracks of the West Side Street-Railroad Company and the tracks of the Woodland Avenue Railway Company and said companies may be consolidated," and in and by the said ordinance it is provided that: "The said consolidated company to carry passengers through without change of cars, by the running of cars through from the workhouse, on the line of the Woodland Avenue Railway Company, to the point on the West Side Street-Railroad where Gordon avenue crosses Lorain street, and, when practicable, in the judgment of the

council, to do likewise on the branches of the consolidated lines, and that for a single fare from any point to any point on the lines or branches of the consolidated road no greater charge than five cents shall be collected, and that tickets at the rate of eleven for fifty cents, or twenty-two for one dollar, shall at all times be kept for sale on the cars by the conductors." This ordinance was duly accepted by the Woodland Avenue & West Side Street-Railroad Company, and its successor, the complainant, has complied with the terms of said ordinance, which has not yet expired; and it also appears that the provision so fixing the rate of fare to be charged at five cents had reference to and included the operation of cars upon that portion of Woodland avenue referred to in the ordinance sought to be enjoined in the bill of complaint. In April, 1887, the Woodland Avenue & West Side Street-Railroad Company accepted an ordinance by the city of Cleveland relating to the construction of an additional track upon Franklin avenue, and in this ordinance it is provided that the grant made shall continue and terminate with the grant of the main line of said company on the 10th of February, 1908, and that it is made upon the express condition that no increase of fare shall be charged by said railway company upon any part of its main line, or on said extension, so that but one fare of not to exceed 5 cents shall be charged between any points on said company's main line or extensions, and that said company shall sell tickets at the rate of 11 for 50 cents, or 22 for $1. This ordinance of 1887 is still in force. The part of the main line referred to, upon which it was so provided that a fare of not to exceed five cents should be charged, is the line of railway formerly known as Kinsman Street, and referred to in the ordinance the operation of which is sought to be enjoined herein. In August, 1887, the city council passed an ordinance, which was duly accepted by the Woodland Avenue & West Side Street-Railroad Company, relating to an extension of its tracks upon Waverly avenue, and this ordinance provided that no increase of fare should be charged by said company on any part of its main line or on said extension, and that but one fare of not to exceed 5 cents should be charged between any points on said company's lines or extensions, and that said company should sell tickets on its cars as follows: 11 tickets for 50 cents, or 22 tickets for $1. This grant is still in force, and the main line upon which the rate of fare is so prescribed includes the line of railway upon Woodland avenue, referred to in the ordinance of October 17, 1898, set forth in complainants' bill. In 1892 the council passed an ordinance, duly accepted by the Woodland Avenue & West Side Street-Railroad Company, relating to an additional track upon Kinsman street, which ordinance required large expenditures of money by way of paving and repairs of pavements, and in said ordinance it was provided that the grant is made upon the conditions that the company shall charge but one fare between any points on said company's main line and extensions, and sell tickets at the rate of 11 for 50 cents, or 22 for $1; all rights under the grant to terminate on the 10th of February, 1908. The main line referred to in this ordinance includes the Woodland Avenue Line, in respect to which the council, by the ordinance of October 17, 1898, seeks to prescribe a lower rate of fare.

It appears from an inspection of the various ordinances that in each instance where new rights were granted to the company the city received as well new and valuable considerations by way of increased obligations in respect to paving, or the operation of through cars for the accommodation of the public, or the selling of tickets upon the cars. Prior to May 13, 1893, the Cleveland City Cable-Railway Company owned and operated lines of street railway upon Superior street by cable power, and lines upon St. Clair street by horse power; and the ordinance under which it was so operating authorized it, for a period of years, which has not yet expired, to operate its lines, and upon each of them to charge a cash fare of not to exceed five cents. In May, 1893, at the time of the consolidation forming the Cleveland City Railway Company, the two companies entering into such consolidation addressed a communication to the city council notifying it of their agreement in that respect, and that on June 1, 1893, it was proposed to operate the lines as an entire system, to issue proper transfers, so that a passenger on any line of the Woodland Avenue & West Side Street-Railroad Company could be transferred to and have a continuous passage upon any line of the Cleveland City Cable-Railway Company, and vice versa; that only one fare should be charged; and that it was proposed to also estab-

lish a cross-town line, and charge but one fare for a continuous ride upon any additional lines within the city of Cleveland. Upon the receipt of such communication, the common council, on May 10, 1893, passed a resolution approving the proposed consolidation upon the terms and conditions stated in such communication; and it appears that since the 1st of June, 1893, the Cleveland City Railway Company, the complainant herein, has operated said various lines of street railway, charging a cash fare of five cents for each passenger, and selling tickets good for passage as required by said several ordinances, and with the system of transfers contemplated in said council resolution, and in all respects complied with the conditions of the various ordinances under which it is operating its railway system. Such being the relations established by ordinance between the city of Cleveland and the complainant, on the 17th of October, 1898, the city council passed an ordinance entitled "An ordinance to provide for a diminution of fare under an ordinance granting a renewal of franchises to the Kinsman Street Company, and to reconstruct, maintain, and operate its street railroad in and through certain streets of the city of Cleveland." This ordinance, after reciting the reservation contained in said ordinance of 1879, providing, "The council, however, reserves to itself the right to hereafter increase or diminish the rate of fare as it may deem justifiable and expedient," further recites that "the council now deems a diminution of fare justifiable," and by section 1 of the ordinance provides "that the rate of fare for a single continuous passage over the lines and all extensions thereof operated under the aforesaid grant to the Kinsman Street Railway Company be, and the same is hereby, fixed at four cents, cash fare, over the whole or any part thereof"; and by section 2 the ordinance requires the company operating said line to keep on sale in its cars, when in operation, tickets good for a single continuous passage at the rate of 7 tickets for 25 cents.

The contention of the Cleveland City Railway Company, and upon which it asks an injunction, is that the said ordinance of October 17, 1898, which so requires it to carry upon a portion of its line at a cash fare of 4 cents, and to sell tickets at the rate of 7 for 25 cents, is in violation and contravention of the contract obligation existing between the said company and the city of Cleveland, and impairs its contract rights in this: that whereas, it is entitled, by virtue of the several ordinances hereinbefore set forth, to charge upon all of its said lines a cash fare of 5 cents, the provision of said ordinance requires it to accept a cash fare of 4 cents; and whereas, it is entitled, as respects ticket fare, to sell tickets at the rate of 11 for 50 cents or 22 for $1, this ordinance requires it to sell tickets at the rate of 7 for 25 cents; and this, the complainant claims, would be an impairment, by law of the state of Ohio, of its contract rights growing out of said ordinance and its acceptance thereof. It is also contended that the practical effect of the ordinance would be to reduce the rate of fare to 4 cents for a cash fare, and $3\,4/_7$ cents for a ticket fare; that experience in the operation of street railways has shown that where there is such a difference in amount between tickets and cash fare, as a matter of convenience and economy at least 70 per cent. of passengers use tickets, so that, if said ordinance be put into operation, the complainant contends it would be obliged to carry about 70 per cent. of its passengers at the rate of $3\,4/_7$ cents, and that about 30 per cent. would pay the cash fare of 4 cents, whereby it claims that its gross receipts would be reduced more than one-fifth, while its operating expenses would remain the same, and that the practical operation of the ordinance would be to diminish its net receipts more than 50 per cent.; and in its bill the complainant gives a comparative statement of gross and net receipts for the year 1897, showing the number of passengers carried, the rate per passenger received under existing ordinances, and what its receipts would have been had the ordinance of October 17, 1898, been put in force upon its entire line; and from this statement it appears that its gross receipts would have been reduced $221,505.38, or something more than 20 per cent., and that the average rate of fare per passenger carried would have been 3.87 cents, and that, in order to have made the gross receipts equal to those under existing ordinances, it would have been obliged to carry, in 1897, 5,736,590 more passengers than it did in fact carry. It is further contended and set forth in the bill that, had the ordinance in question been in operation in 1897 over the entire line, the company would have suffered a loss in income of $221,505.38,—more

than 52.5 per cent. of its net income; and for the same period of time, and assuming that 70 per cent. of passengers carried would have used tickets, the loss to the company would have been $259,971.59,—more than 61 per cent. of its net income. And the complainant contends that the losses which it alleges would result are reached in the statements given without including anything for interest charges, depreciation, nothing for dividends or interest on capital stock, and nothing by way of sinking fund, which it is alleged should be allowed by reason of the shortness of the franchises of the company; and the complainant contends that said reduction of fare would deprive it of the reasonable profits which it is entitled to derive from its property, and constitutes a taking of its property without due process of law, in contravention of the constitution of the United States.

The complainant the Cleveland Electric Railway Company is a corporation duly organized under the laws of the state of Ohio, having a capital stock of $12,000,000, substantially all of which is issued, and a bonded indebtedness, secured by mortgage upon its property, aggregating about $3,750,000, and a floating indebtedness of about $250,000. This company was formed by the consolidation of four existing railway companies in the city of Cleveland, each of which owned and was operating lines of street railway under ordinances passed by the municipality; and, by the terms of such consolidation, and by the statutes of Ohio, became possessed of the rights, franchises, and privileges theretofore possessed by each of the constituent companies. The constituent companies entering into such consolidation were the East Cleveland Railroad Company, the Broadway & Newburgh Street Railroad Company, the Brooklyn Street Railroad Company, and the South Side Street-Railroad Company. The said the East Cleveland Railroad Company was a corporation which had been in existence, and operated lines of street railway in the city of Cleveland, since about the year 1859, and at the time of said consolidation owned and was operating several lines of street railway in said city, namely, its Euclid Avenue Line, extending from the business portion of the city, on Bank street, through Superior street, Euclid avenue, Erie street, Prospect street, Case avenue, and Euclid avenue to the city limits; its Garden Street Line, its Cedar Avenue Line, and its Wade Park Avenue Line. That the aggregate mileage of the lines operated by said company was about 40 miles, and each of said lines had been constructed, and was in operation, under grants from the city of Cleveland, and upon the faith of which the said company had so constructed its lines of railway, and in and by which said grants the city and said company, as authorized by the statutes of Ohio, had agreed as to the terms and conditions and the period of time for the operation by said company of its said lines of street railway. That prior to September 15, 1879, the East Cleveland Railroad Company was operating its main line of railway from the intersection of Superior and Water streets to the easterly limits of the city on Euclid avenue, under various separate grants, some from the city council, some granted by the county commissioners before the territory affected thereby became a part of the city of Cleveland, and still other grants from the authorities of the former village of East Cleveland; and the contract rights of the company for the operation of its road easterly of Willson avenue contained few restrictions, and none respecting the rates of fare to be charged, and extended for a period of nearly 20 years; and at that time, east of Willson avenue, upon Euclid avenue, there was but a single track, and under contracts and agreements then in force between the company and the public authorities it had the right to charge passengers one fare from Water street to Willson avenue, another fare from Willson avenue to Fairmount street, and still another fare from Fairmount street to the city limits; and it was, in fact, at that time charging passengers two fares between Water and Superior streets and the city limits. That, in this situation, the said the East Cleveland Railroad Company and the city entered into a new contract, providing for the renewal of the grant to the said the East Cleveland Railroad Company for the construction, maintenance, and operation of a double-track street railway over a portion of the line then operated by said company from Superior and Water streets, through Superior street, around the Public Square to Euclid avenue; through said avenue to Erie street; thence to Prospect street; thence to Case avenue; thence to Euclid avenue, and along said Euclid avenue to Willson avenue; and said ordinance imposed new con-

ditions as respects paving to be done by said company, removal of snow and ice from the tracks, and other similar provisions; and in and by section 6 of said ordinance it was provided that said company should not charge more than five cents each way for a passenger over the whole or any part of the line therein renewed. That said company might charge a reasonable compensation for carrying packages, and that the council reserved to itself the right to thereafter increase or diminish the rate of fare, as it might deem justifiable or expedient; and under and by the terms of said ordinance, which was to remain in force for the period of 25 years from the 20th day of September, 1879, the said company reconstructed its tracks between Superior and Water streets and Willson avenue, as aforesaid, and thereafter, up to April, 1883, charged, as it was permitted to do by said ordinance, one fare of five cents between Superior and Water streets and Willson avenue, and an additional fare of five cents from Willson avenue eastwardly to the end of its line. That about April 4, 1883, said company entered into a new contract with said city, by ordinance duly passed and accepted by the company, by which, upon certain terms and conditions, it was granted the right to extend and to build an additional track, and operate a double-track line upon Euclid avenue from Willson avenue to Fairmount street; and in said ordinance and grant said company agreed that it would charge but one fare of not more than five cents between the westerly terminus of the company's road upon Superior street and the easterly terminus of its line, and that the rights granted should expire on the 20th day of September, 1901; and in and by said contract it was provided that the council reserved to itself the right to thereafter increase or diminish the rate of fare between the westerly end of said company's line on Superior street and the city limits, as it might deem justifiable and expedient. That upon the making of the last-mentioned contract the relations between the city and the East Cleveland Railroad Company were so far changed that the company had agreed to carry passengers over its lines as far easterly as the city limits for five cents for each passenger, but it had not agreed, and was under no obligation, to run all its cars through, and was, in fact, operating only a portion of its cars as through cars, and was under no obligation to and was not transferring passengers who desired to go east of Willson avenue who had taken passage upon a car which did not go beyond that point. That such arrangement and operation were unsatisfactory, both to the city and to the company, and in March, 1886, a new contract was entered into between the city and the railroad company by ordinance duly passed, and accepted by the railroad company, whereby it became obligated to construct and operate a double-track railroad in Euclid avenue between the easterly line of Fairmount street and the easterly limits of the city, such territory having theretofore been occupied by a single track; thereby making its entire Euclid Avenue Line a double-track street railroad. And in said ordinance it also agreed to pave between the rails of each track, together with the spaces between the rails, and to keep certain portions of the pavement in good repair; each and all of which obligations were in addition to those existing under former contracts between the railroad company and the city. And the complainant claims that in and by said ordinance an entirely new contract and agreement, superseding all contracts prior thereto, was made with the city by the said railroad company with respect to the rates of fare which it should charge over its said line so to be made into a double-track through line from Superior and Water streets to the easterly limits of the city upon Euclid avenue. the agreement between the city and the railroad company with respect to the fare thereafter to be charged being as follows: That said company should operate the whole of said track as a through line, with through cars, and should charge and collect but one fare of not more than five cents for each passenger one way in either direction, between the easterly limits of the city on Euclid avenue and the westerly terminus of said company's tracks at the intersection of Superior and Water streets; and that the company should run through cars over said line between the points last named in either direction, as the public convenience, in the opinion of the common council, by resolution expressed, should require; and that the contract so made should be in force until the 20th day of September, 1904,—which contract, having been so duly expressed by ordinance, and accepted by said the East Cleveland Railroad Company, the complainant the Cleveland Electric Railway Company claims

became a valid contract between the said the East Cleveland Railroad Company and the city of Cleveland, by which said company agreed, in consideration of the grants therein made to it, to make the necessary expenditures contemplated in said ordinance with respect to the reconstruction of its tracks, and assumed and agreed to perform additional obligations in respect to paving, and agreed that it would operate said road in accordance with the terms of said ordinance until the 20th day of September, 1904; and that during such time it would carry passengers at the rate of fare so fixed in said ordinance, to wit, five cents for each passenger one way, in either direction, over said entire line; and in pursuance of said contract, and in reliance thereon, the said company proceeded to in all respects comply with the conditions of said ordinance, and began the operation of a through line of cars in accordance with the terms thereof, and said company, and said complainant, its successor, have ever since said time fully complied with the terms and conditions of said last-mentioned ordinance, and are now complying therewith, although said company thereafter voluntarily began the sale of tickets good for passage at a less rate than it was authorized to charge in said ordinance, to wit, at the rate of 11 tickets for 50 cents. That prior to July, 1888, the line of railway of the said the East Cleveland Railroad Company had been operated by horse power. That at that date such progress had been made in perfecting the system of propelling cars by electric motors that the company was willing to incur the necessary expense of equipping certain of its lines with electricity, and thereupon the said company and said city entered into a still further contract, by ordinance duly passed and accepted, providing for the equipment and operation of said company's Euclid Avenue and Cedar Avenue Lines by electricity, and in said ordinance and contract it was provided that the privilege of constructing the electric system and the operation of said lines thereby was granted to said company in consideration of the improved facilities contemplated, and the large expense necessary to secure the same, and that the right to operate said line after the expenditure of said large sum of money so necessary for its equipment should be and remain in force for the period of 25 years from and after the passage of said ordinance both upon the main line and what is known as the Cedar Avenue Line of said company, and provided that nothing in the ordinance should be construed to authorize any increase of present fare for transportation over any part of said company's lines. And your orator shows and alleges that at the time of the passage of said ordinance and its acceptance by said company the rate of fare therein referred to which was not to be increased was, as hereinbefore set forth, five cents for each and every passenger carried in either direction over said lines, and it was in terms provided in said ordinance that its acceptance should be deemed an agreement with the said company by which it agreed to perform all and singular the matters and things therein agreed by it to be performed. The council were also given permission in and by said contract to require the company thereafter to equip the entire length of its main line and Cedar Avenue Line with electricity; and thereafter, in reliance upon its said contract, and the performance thereof by the city, said company proceeded, at the expense of many hundreds of thousands of dollars, to equip its said lines with electricity in pursuance of the terms of said ordinance. That thereafter the said the East Cleveland Railroad Company entered into another contract with the city of Cleveland, by ordinance passed and accepted, by which it was given authority to construct and operate the line known as the "Wade Park Avenue Line," the company agreeing, in consideration thereof, to do certain additional paving, and to submit to various other requirements as in said ordinance expressed, and with respect to the rate of fare to be charged by said company, said ordinance and contract provided that no increase of fare should be charged by said company on any part of its main line or said extension, and that one fare, not to exceed five cents, or one of said company's tickets, should entitle a passenger to transportation over the main line and extension from the intersection of Lake and Water streets to the easterly limits of the city. That, in compliance with the terms of said ordinance and contract, said East Cleveland Company constructed and placed in operation the said Wade Park Avenue Line at great expense, and since said time said line has been operated at the rates of fare therein fixed, and in all respects the conditions of said ordinance complied with. That prior to May, 1893, the said the East Cleveland Railroad

Company, the Broadway & Newburgh Street Railroad Company, the Brooklyn Street Railroad Company and the South Side Street-Railroad Company were engaged in the operation of their respective lines of road in various and different parts of the city, and, as authorized in various contract grants under which they had constructed their said lines of railway and were operating the same, each and all of said constituent companies were charging a cash fare of five cents, and that their right so to do was fixed by the terms of their respective contracts and agreements with the city; and complainant alleges that there was not, at any time, as respects any one of said constituent companies, power in the common council of the city to in any manner compel said companies, or any one of them, during the existence of their respective grants, to reduce the cash fare to be charged by the said companies, or either one of them, below a cash fare of five cents. That each of said constituent companies operated its line as an independent line. That no system of transfers (except between the South Side and Brooklyn lines) from the line of one of said roads to the lines of others was in force, so that a passenger, having occasion to use more than one of said lines, was obliged to pay two fares of five cents each; and that each and all of the grants under which said companies were so operating under the rights aforesaid prior to the 29th day of May, 1893, are still in force and effect. That about April 11, 1893, the said constituent companies entered into an agreement of consolidation, in conformity with the statutes of Ohio, and formed and organized the complainant the Cleveland Electric Railway Company as a consolidated company, by virtue of which consolidation the complainant the Cleveland Electric Railway Company at once became possessed of and vested with all and singular the property, rights, franchises, and privileges of each and all of said constituent companies; and such consolidation being effected, and complainants intending to operate said lines as one entire system, and to give to the public in the city the privilege of riding over said system by a continuous passage for one fare, the complainant applied to the common council of the city of Cleveland for its consent and approval of the terms of said consolidation so far as they related to the maintenance and operation of said various lines and rates of fare which should be charged by said complainant, and upon May 29, 1893, said city council duly adopted a resolution consenting to said consolidation, and providing, among other things, as follows: "That only one fare shall be charged for a continuous ride on or over any line of railway formerly owned by any of said constituent companies and any line of any other of said constituent companies within the limits of the city of Cleveland; and passengers on any such lines paying one fare shall be entitled, without additional or extra charge, to be transferred to any other of said lines, and having one continuous ride thereon for said single fare." Said resolution further provided that the Cleveland Electric Railway Company should file with the city clerk a written acceptance of the terms of said resolution within 10 days from the time of its adoption, which written acceptance was duly filed, as required by the terms of said resolution, on the date of its passage, May 29, 1893; and the complainant has, ever since the adoption of said resolution, continued to operate said various lines of railway, and to charge only the same cash fare of five cents for each passenger, in strict compliance with each of the different contracts which each of said constituent companies had with the city, and which are still in full force. And the complainant the Cleveland Electric Railway Company adopted and put in force the system of transfers contemplated in said council resolutions, and has, although not required so to do by the grants and contracts of the East Cleveland Railroad Company, kept on sale, and accepted for passage, tickets sold at the rate of 11 for 50 cents or 22 for $1. That no one of the grants or contracts aforesaid under which said constituent companies which formed the complainant were authorized to operate their various lines of street railway and to charge a cash fare of five cents for each passenger carried thereon, has expired, but all of said grants are in full force and effect. That, in December, 1893, the complainant duly accepted an ordinance of the city authorizing it to extend its double-track railway on Prospect street from Erie street to Ontario street, in which ordinance it was provided that the complainant, with respect to all lines of railway which it was operating, should comply with the terms and conditions of said resolution of the city council passed May 29, 1893, approving said terms of consolidation,

and that it should, upon each of said lines, comply with the conditions of said last-mentioned ordinance; that said grant so made has not yet expired, and that no one of the grants under which complainant is operating its lines of street railway expire before the year 1910.

Such being the relations established by ordinance between the city of Cleveland and the complainant the Cleveland Electric Railway Company, on the 17th day of October, 1898, the city council passed an ordinance entitled "An ordinance to provide for diminution of the rate of fare under section 6 of an ordinance passed September 15, 1879, entitled, 'An ordinance granting a renewal of franchise to the East Cleveland Railroad Company to reconstruct, maintain, and operate its street railroad in and through certain streets of the city of Cleveland.'" This ordinance, after reciting the reservation contained in said ordinance of 1879, providing, "The council, however, reserves to itself the right to hereafter increase or diminish the rate of fare as it may deem justifiable and expedient," further recites that the "council does now deem it justifiable and expedient to diminish the rate of fare," and by section 1 of the ordinance provides: "That the rate of fare for a single continuous passage over the lines and all extensions thereof operated under the aforesaid grant to the said East Cleveland Railroad Company be, and is hereby, fixed at four cents cash fare over the whole or any part thereof;" and by section 2 the ordinance requires the company operating such line to keep on sale on its cars, when in operation, tickets good for a single continuous passage at the rate of 7 tickets for 25 cents.

The complainant the Cleveland Electric Railway Company makes substantially the same contention with respect to said ordinance last mentioned being in contravention of its contract obligations with the city of Cleveland with respect to cash fares and ticket fares as provided therein, and impairment of contract rights, and also with respect to the practical effect of the ordinance if put in operation, as to diminishing receipts, etc., as claimed by the complainant the Cleveland City Railway Company, hereinbefore referred to, except as to the comparative statement of gross receipts given in the bill of the Cleveland Electric Railway Company for the years 1896 and 1897, from which it appears that its gross receipts would have been reduced, in 1897, $334,890.67, or something more than 20 per cent., and that the average rate of fare per passenger would have been 3.80 cents, and that, in order to have made the gross receipts equal to those under existing ordinances, it would have been obliged to carry, in 1897, 3,812,912 more passengers than it did in fact carry. It further contends and sets forth in its bill that, had the ordinance in question been in operation in 1897 over the entire line, the company would have suffered a loss of income of $380,346.18,—more than 64 per cent. of its net income,—and the complainant contends that the losses which it alleges would result are reached in the statements given without including anything for interest charges, depreciation, nothing for dividends or interest on the capital stock, and nothing by way of sinking fund, which it alleges should be allowed by reason of the shortness of the franchises of the company; and the complainant contends that said reduction of fare would deprive it of the reasonable profits which it is entitled to derive from its property, and constitute a taking of its property without due process of law, in contravention of the constitution of the United States.

Squire, Sanders & Dempsey, for complainants.
Miner G. Norton and Ford, Boyd & Crowl, for respondents.

RICKS, District Judge (after stating the facts). The constitution of Ohio has empowered the legislature to confer upon the city of Cleveland the authority to operate lines of railway through its streets. Acting under this delegated power, as expressed in the Revised Statutes (section 2501 et seq., and section 3437 et seq.), the city council, from time to time, has made grants to the street railroads, conferring privileges upon them, and at the same time prescribing the terms and conditions under which such lines should be located and operated. Among the powers so vested in the city was the right

to prescribe the rate of fare to be collected during the life of each grant. The city, acting under this general authority so conferred, passed ordinances at different times pertaining to the street railways, which make a printed volume, and are in evidence before the court. These ordinances, granting sometimes original and sometimes additional authority, were accepted by the street-railway companies; and these acceptances, on the one side, and grants made with conditions, on the other, became a contract between the parties, which could not be annulled or amended without the consent of both parties. Railroad Co. v. Smith, 29 Ohio St. 292; Cincinnati & S. Ry. Co. v. Village of Carthage, 36 Ohio St. 634; City of Columbus v. Columbus St. R. Co., 45 Ohio St. 104, 12 N. E. 651; City R. Co. v. Citizens' St. R. Co., 166 U. S. 557, 17 Sup. Ct. 653; Chicago v. Sheldon, 9 Wall. 50; Waterworks Co. v. Rivers, 115 U. S. 674, 6 Sup. Ct. 273. These ordinances, so molded into contracts under the legislative power hereinbefore referred to, are, in effect, laws of the state of Ohio, and therefore are within the inhibition of the fourteenth amendment to the constitution of the United States, which is directed quite as pointedly to the legislative power of the state or municipality as to the executive or judicial; so that the obligations of contracts made by legislation are protected by the federal constitution, which prohibits a state from passing any law impairing the obligations of contracts, or the taking of property without due process of law. City R. Co. v. Citizens' St. R. Co., 166 U. S. 562, 17 Sup. Ct. 653. This court has jurisdiction to afford the relief prayed for in these bills, and has authority to declare invalid the ordinances now sought to be enforced, if, as contended by the complainants, the ordinances involved do impair existing contract rights, or, in practical operation, deprive the complainants, respectively, of property, without due process of law. In City R. Co. v. Citizens' St. R. Co., 166 U. S. 562, 17 Sup. Ct. 655, the court say:

"All that is necessary to establish the jurisdiction of the court is to show that the complainant had, or claimed in good faith to have, a contract with the city, which the latter had attempted to impair." "Conceding that the legislature of the state alone had the right to make such a grant, it may, as was observed in Wright v. Nagle, 101 U. S. 792–794, exercise authority by direct legislation, or by agency duly established, having power for that purpose. The grant, when made, binds the public, and is, directly or indirectly, the act of the state. The easement is a legislative grant, whether made directly by the legislature itself or by any one of its properly constituted instrumentalities."

See, also, Saginaw Gaslight Co. v. City of Saginaw, 28 Fed. 529; Weston v. City Council of Charleston, 2 Pet. 461; Waterworks Co. v. Rivers, 115 U. S. 674, 6 Sup. Ct. 273. That a bill in equity seeking a judicial decree declaring an ordinance which impairs the contract rights of the complainant, or takes from him or it property without due process of law, is a proper remedy, has been specifically determined by the supreme court. Chicago, M. & St. P. Ry. Co. v. Minnesota, 134 U. S. 460, 10 Sup. Ct. 462, 702; Smyth v. Ames, 169 U. S. 466, 18 Sup. Ct. 418. As the various ordinances in force when the council passed the so-called "Low Fare Ordinances," in October, 1898, prescribed the rate

of fare which the companies might charge during the life of each grant, the city possessed no power to modify such grant as respects the rate of fare, unless such power of modification was reserved in the ordinance making the grant. The statutes of Ohio confer power upon municipalities to determine the conditions of the grant at the time it is made, including fixing the rates of fare to be charged, but no power to thereafter prescribe rates of fare. Where the grant itself fixes the rate of fare, a reserved right of regulation does not authorize a municipality, after the rate of fare has been so fixed, to modify or change it during the life of the grant. Old Colony Trust Co. v. City of Atlanta, 83 Fed. 39.

It is held by the superior court of Cincinnati in Smith v. Cincinnati:

"A general ordinance providing for the construction and operation of a street railway within the city limits, which provided that on the acceptance by the existing companies of the terms of the ordinance it shall thereupon be operative and binding as a contract between the city and the company so accepting the same, and that the street railroad shall be guided, governed, and regulated by the following conditions, and such lawful and reasonable restrictions as the council may thereafter pass, does not reserve to the council the right to abridge or destroy any of the contract rights of the company, but only to make and enforce proper and reasonable regulations as to the operation or construction of the routes."

It is apparent that whether the ordinances of October 17, 1898, are valid and enforceable against the respective complainants depends, in the first instance, upon the solution of the question whether the reservations in the ordinances of 1879 authorized the action taken by the council in passing these "Low Fare Ordinances" in October, 1898. If, subsequent to the passage of these ordinances of 1879, no other grants had been made prescribing rates of fare upon the lines referred to in the ordinances of 1879, the only question presented would be whether the reserved right is now being exercised in a reasonable manner. It appears, however, that numerous other ordinances have been passed, and accepted by each of the complainant companies, relating to the same subject-matter, viz. the rate of fare to be charged upon the same lines of railway referred to in the ordinance of 1879. It therefore becomes necessary to inquire how far, if at all, the contract rights of the parties have been changed by these subsequent ordinances. The general principles to be followed in such an examination are well settled. In U. S. v. Tynen, 11 Wall. 92, the rule is stated as follows:

"When there are two acts on the same subject, the rule is to give effect to both, if possible, but, if the two are repugnant in any of their provisions, the latter act, without any repealing clause, operates, to the extent of the repugnancy, as a repeal of the first; and, even where two acts are not, in express terms, repugnant, yet if the latter act covers the whole subject of the first, and embraces new provisions, plainly showing that it was intended as a substitute for the first act, it will operate as a repeal of that act."

See, also, District of Columbia v. Hutton, 143 U. S. 18, 12 Sup. Ct. 369; U. S. v. Claflin, 97 U. S. 546.

And again, where parties, having entered into a written contract, thereafter makes a second contract relating to the same subject, to the extent that the provisions of the second contract are incon-

sistent with those of the first the last contract, and not the first, measures the obligations of the parties. In 5 Lawson, Rights, Rem. & Prac. §§ 2569, 2570, the rule is stated as follows:

"One written contract, complete in itself, will be conclusively presumed to supersede another one made prior thereto in relation to the same subject matter. The rescission may be implied in some cases. Thus, if an agreement be made between the same parties containing the same matter, in which the terms of the latter are inconsistent with those of the former, so that they cannot subsist together, the latter will be construed to discharge the former."

See, also, Chrisman v. Hodges, 75 Mo. 413; Hargrave v. Conroy, 19 N. J. Eq. 281; McDonough v. Kane, 75 Ind. 181; Howard v. Railroad Co., 1 Gill, 311.

With these principles in mind, we proceed to inquire, as respects the Cleveland City Railway Company, whether the common council of Cleveland, in October, 1898, was authorized, under then existing contracts between it and the said company, to take action under the reservation in the ordinance to the Kinsman Street Railroad Company of 1879, and reduce fares, as was attempted to be done by the ordinance of which complaint is made in the bill. The ordinance by virtue of which this reserved right to reduce fares is claimed was passed August 25, 1879, and entitled "An ordinance granting a renewal of franchise to the Kinsman Street Railroad Company to reconstruct, maintain and operate its street railroad in and through certain streets of the city of Cleveland," and it authorized the Kinsman Street Railroad Company to construct, maintain, and operate a double-track street railroad from Water street to Madison avenue upon Kinsman street (now Woodland avenue), and by section 7 of this ordinance it was provided as follows:

"Said company shall not charge more than five cents fare each way for one passenger over the whole or any part of its line, but said company may charge a reasonable compensation for carrying packages; the council, however, reserves to itself the right to hereafter increase or diminish the rate of fare, as it may deem justifiable and expedient."

This ordinance, then, was a grant to the Kinsman Street Railroad Company, and related to the operation by such company and its successors from Water street to Madison avenue on Kinsman street. the name of the latter street having been subsequently changed to Woodland avenue. It appears in evidence that the successor of the Kinsman Street Railroad Company was the Woodland Avenue Railway Company, and that from about 1880 to 1885 the Woodland Avenue Railway Company owned and operated this so-called "Kinsman Street Line." After the Woodland Avenue Railway Company acquired such line, to wit, in 1883, an ordinance was passed by the council, and duly accepted by the company, by which the company was authorized to extend its tracks upon Woodland avenue upon certain terms and conditions expressed in the ordinance; and in said ordinance it was provided that its existing railway and this extension should thereafter be operated as an entire line, and that but one fare of five cents over its entire line, including said extension, should be charged. This ordinance of 1883 relates to the operation of the company's street railroad as well over the line referred to in the Kinsman Company

ordinance of 1879, and contains no reservation of the right to there-after increase or diminish the rate of fare. In 1885 the Woodland Avenue Railway Company and the West Side Street-Railroad Company consolidated. At the time of such consolidation the West Side Street-Railroad Company was operating a line of railroad chiefly upon the west side of the river, under a grant from the city of Cleveland expiring 25 years from July, 1883, and under the terms of the grant was authorized to charge a cash fare of five cents; the city having reserved no right to change such rate of fare during the period of the grant. The effect of the consolidation was to establish a new main line extending from the southeasterly to the westerly portion of the city, and with reference to such consolidation the common council, on February 16, 1885, passed an ordinance entitled:

"An ordinance to fix the terms and conditions upon which the railway tracks of the West Side Street-Railroad Company and the tracks of the Woodland Avenue Railway Company, and said companies may be consolidated.

"Section 1. Be it ordained by the city council of the city of Cleveland that the consent of the city is hereby given to the consolidation of the West Side Street-Railroad Company and the Woodland Avenue Railway Company, upon the following conditions: The said consolidated company to carry passengers through,. without change of cars, by running of the cars through from the workhouse, on the line of the Woodland Avenue Railway Company, to a point on the West Side Street-Railroad Company where Gordon avenue crosses Lorain street, and, when practicable in the judgment of the council, to do likewise on the branches of the consolidated lines; and that, for a single fare from any point to any point on the lines or branches of the consolidated road, no greater charge than five cents shall be collected, and that tickets, at the rate of eleven for fifty cents, or twenty-two for one dollar, shall at all times be kept for sale on cars by conductors."

This ordinance, as appears in evidence, was duly accepted by the consolidated company, the Woodland Avenue & West Side Street-Railroad Company, and it is to be observed that it had reference to and included the operation of cars as part of a through line upon that portion of Woodland avenue which is referred to in the grant to the Kinsman Street Railroad Company of 1879, and amounts to an agreement on the part of the Woodland Avenue & West Side Street-Railroad Company that it will thereafter carry passengers over such entire route at a cash fare of 5 cents, and ticket fare by tickets sold at the rate of 11 for 50 cents, or 22 for $1. It further appears that in April, 1887, the Woodland Avenue & West Side Street-Railroad Company accepted an ordinance passed by the city council relating to an additional track upon Franklin avenue, and that in such ordinance it is provided that the grant therein made should continue and terminate with the grant on the main line of said company, on the 10th day of February, 1908, and that the grant was made upon the express condition that no increase of fare should be charged by said railway company on any part of its main line, or on such extension; so that but one fare, not to exceed 5 cents, should be charged between any points on said company's main line or extension, and that said company should sell tickets at the rate of 11 for 50 cents or 22 for $1. This grant, by its terms, does not expire until the 10th day of February, 1908, and it requires the company to carry passengers at a cash fare of five cents during that period, over its entire

main line, as well as its extension; and it also appears that part of the main line over which it was so required and agreed to carry at the rate of five cents cash fare was the line of railway operated on Woodland avenue (formerly Kinsman street) under the grant made to the Kinsman Street Railroad Company in 1879. Again, in August, 1887, an ordinance was passed, and accepted by the Woodland Avenue & West Side Street-Railroad Company, relating to the further extension of its tracks on Kentucky street, and in this ordinance it is provided that the grant shall expire with the grant of the main line on February 10, 1908, and that it is made upon the condition, agreed to by the company, that no increase of fare shall be charged by said company on any part of its main line or extensions, and that but one fare, not to exceed 5 cents, should be charged between any point and any other point on said company's main line or extensions, and that tickets should be sold at 11 for 50 cents or 22 for $1. This grant has not yet expired, and the main line, in respect to which the company so agrees to operate at a cash fare of five cents, includes the line of railway operated under the grant to the Kinsman Street Railroad Company in 1879. On June 20, 1892, the Woodland Avenue & West Side Street-Railroad Company accepted a further ordinance passed by the council, relating to an additional track upon Kinsman street, which ordinance imposed various additional obligations with respect to paving and repairing, and involved the expenditure of a considerable sum of money on the part of the company; and in this ordinance it is provided that it is granted upon the condition that the company shall charge but one fare between any points on said company's main line and extensions, and sell tickets at the rate of 11 for 50 cents or 22 for $1; and that the grant shall terminate with the grant of the company's main line on February 10, 1908. This ordinance is in full force, and is an agreement upon the part of the company to carry at the rate of fare stated, good for passage over its entire main line and extensions, including, as part of its main line, the line upon Woodland avenue (formerly Kinsman street), operated under the original grant to the Kinsman Street Railroad Company, in 1879. It also appears from an inspection of the ordinances that in each instance in which new grants were made to these companies, new and valuable considerations passed to the city for the making of the same by way of increased requirements for paving, and additional accommodations in the operation of cars. It appears in the bill and evidence that the complainant the Cleveland City Railway Company was formed on May 13, 1893, by a consolidation of the Woodland Avenue & West Side Street-Railroad Company and the Cleveland City Cable-Railway Company. The last-named company at that time owned and operated lines of street railway upon Superior street by cable power, and upon St. Clair street by horse power, and was operating under grants of the city of Cleveland for a period of years which has not yet expired; and the grants under which said cable company was operating authorized it and its successors, throughout the entire period of said grants, to charge a cash fare of five cents, there being in none of such grants any reservation of any right on the part of the city council to increase

or diminish the rate of fare to be charged; and the company, at the time of the consolidation, was operating its road and charging a cash fare of five cents, as authorized in the ordinances of the city. Under the consolidation it was proposed to operate all the lines of the two constituent companies as an entire system, to operate through cars thereon, and permit passengers, for one fare of five cents, to ride from one end of said line so consolidated to the other; and, such being the purpose of the consolidation, on May 13, 1893, a communication was addressed to the common council of the city of Cleveland, as follows:

"To the Honorable Council of the City of Cleveland, Ohio: The Woodland Avenue & West Side Street-Railroad Company and the Cleveland City Cable-Railway Company have agreed to consolidate their two lines into the Cleveland City Railway Company; the consolidation to take effect June 1st, 1893. It is proposed, on June 1st, 1893, to immediately issue proper transfers, without extra charge, so that passengers on any line of the Woodland Avenue & West Side Street-Railroad Company may be transferred to and have a continuous passage upon any line of the Cleveland City Cable-Railway Company within the limits of the city of Cleveland, and also so that passengers upon any line of the Cleveland City Cable-Railway Company may be transferred to and have a continuous ride upon any line of the Woodland Avenue & West Side Street-Railroad Company within the city of Cleveland; only one fare to be charged for such ride. And, as soon as the necessary improvements can be made, additional cross-town lines will be run, and only one fare charged for a continuous ride upon any additional lines within the city of Cleveland."

On May 15, 1893, the common council of the city passed a resolution approving and consenting to the consolidation of the companies and the operation of cars upon the terms stated in said communication. It appears in evidence that since the consolidation forming the said complainant company the Cleveland City Railway Company it has continued the operation of its various lines of street railway, as proposed in said communication; has continued to charge the same cash fare of 5 cents for each passenger; has put in force the system of transfers contemplated in the council resolution; and has kept on sale tickets at the rate of 11 for 50 cents or 22 for $1. It also appears that no one of the grants under which the constituent companies which formed said complainant were authorized to operate their cars on their various lines of railway at a cash fare of 5 cents, and to sell tickets at the rate of 11 for 50 cents, has expired, but that each and all of said ordinances are in full force, and that none of said grants expire prior to the year 1908. This being the situation, can the city successfully contend that the reservation in the ordinance of 1879 relating to the Kinsman Street Railroad Company is now operative as respects the complainant the Cleveland City Railway Company? Prior to 1885, the West Side Street-Railroad Company was operating upon the west side of the Cuyahoga river. There was no interchange of traffic by transfer between it and the Woodland Avenue Railway Company, and passengers were obliged to pay a cash fare upon each road. The West Side Company was operating under a grant running for 25 years from February, 1883, entitling it to charge a cash fare of five cents. The consolidation of the Woodland Avenue and West Side Companies was made upon the condition that a

new through line of street railroad should be established, so that for a single fare passengers should be carried from any point to any point on the lines or branches of the consolidated company. Upon the taking effect of this consolidation, the relations of the two companies to the city were so far changed that, whereas the companies before had operated independent lines of railroad, and charged separate fares, a new through line was established, and a rate of fare fixed upon the entire line of five cents. The right to so charge five cents, and to carry at ticket fare at the rate specified, of course involved the right to charge such fare for the whole or any portion of the distance traveled on the line. It was competent for the companies and the city to at that time agree with respect to the terms and conditions, including the rate of fare, upon which this through line should be operated. The parties did make such contract, and one of the terms of the contract related to the rate of fare to be charged over the entire line; and part of the line with respect to which the rate of fare was so fixed in 1885 was the same line referred to in the Kinsman Street-Railroad Company ordinance of 1879; that is to say, the city and the railway companies, in 1885, contracted with respect to the same subject-matter referred to in the ordinance to the Kinsman Street-Railroad Company in 1879. This ordinance of 1879 at the time related solely to the rate of fare upon Kinsman street, operated as an independent line. The ordinance of 1885 is a contract with respect to the same subject-matter, but establishes a rate of fare which should apply to the Kinsman Street Line, not as an independent line, but as part and parcel of a direct through line from the southeasterly to the westerly part of the city. It is to be observed that no reservation is contained in this ordinance of any right to increase or diminish the rate of fare therein fixed, and the right to operate under this ordinance of 1885 was in full force in October, 1898. It must follow that no power existed in the council, in 1898, to change the rate of fare which had been so established by agreement between the parties. Again, it is apparent that the existence of any such reservation is inconsistent with the right which is expressly granted by the ordinance of 1885. The consolidated company certainly acquired the right to carry to the end of the term at five cents over the entire line or any portion thereof. This right could not co-exist with a right in the council to reduce the rate of fare during the period, as respects a portion of the line. By the contention of the city the right to reduce could now only be made applicable to the Kinsman Street Line and its extension. The city, however, contracted in 1885 that the company might carry over the Kinsman Street Line, as part of the through line, at a cash fare of five cents; from which contract it necessarily follows that the entire contract relations of the company and the city, as respects the rate of fare to be charged on the Kinsman Street Line, were merged in the contract of 1885, and the subsequent ordinances by which the Kinsman Street Line ceased to be independent, and became part and parcel of a through line, upon which a rate of fare for the full period of the grant was established. By the subsequent ordinances

94 F.—26

of 1887 and 1892, running to the Woodland Avenue and West Side Companies, it is, as respects each of them, as before pointed out, expressly provided that their conditions, as respects fare, shall be applicable to the entire main line of the company, that the rate of fare shall continue to be five cents until the expiration of the several grants, and that the grants do not expire until the 10th day of February, 1908. Again, in determining the contract rights of the complainant company, regard must also be had to its rights under the grants to the Cleveland City Cable-Railway Company, which the present company acquired by the consolidation of 1893. The cable company had the right to operate, at a cash fare of five cents, its independent lines of railway. By virtue of the consolidation, its various lines became part of a great through system, operated by the consolidated company, whereby the public acquired the right of a continuous passage over the entire line for one fare of 5 cents, or ticket fare at the rate of 11 tickets for 50 cents or 22 for $1. The consolidated company, by virtue of such consolidation, acquired all the rights which had before pertained to the constituent companies with respect to the rates of fare which it was lawful to charge, except so far as it had voluntarily modified the same by entering into the consolidation; and it then became the duty of the company, and in the performance of such duty it acquired a corresponding right to carry over its entire line, or any portion thereof, at a cash fare of five cents. A portion of the entire system which this company is now operating under these several grants from the city was formerly the line of the Kinsman Street Railroad Company, and the reservations under which the city now claims the right to reduce rates of fare upon the portion of the line which was formerly the Kinsman Street Line was made with reference to, and can only have reference to, the operation of the Kinsman Street Line as an independent line. Now the situation has so far changed that, by operation of law, and by express contract with the city of Cleveland, this original Kinsman Street Line has become part and parcel of a through line, and, as respects the rates of fare which may be charged upon such through line, the city and the railway company have entered into various contracts expressly fixing the rates of fare to be charged over the through line, or any part thereof.

If the ordinances, as respects rates of fare, which we have been examining, passed since 1879, are to be construed as statutes, it follows that, having been passed subsequent to the ordinance of 1879 relating to the Kinsman Street Railroad Company and relating to the same subject-matter, they are so far inconsistent with the ordinance of 1879 as to operate as a repeal thereof. If we treat these subsequent ordinances simply as contracts, it is apparent that, having entered into a contract in 1879, the city has subsequently entered into various other contracts relating to the same subject, and that these later contracts are so far inconsistent with the provisions of the original ordinance as that the rights of the parties must now be measured by their latest contract, and not by the original agreement. Again, the inconvenience, if not the

absolute impracticability, of enforcing the obligations of both the original ordinance of 1879 and the subsequent ordinances, in and of itself must well-nigh force the conclusion that the rights of the parties must be gathered from these later, rather than from the original, ordinance. The complainant company confessedly has the right by contract to carry over its entire line, or any portion thereof, at a cash fare of five cents, and this it may do until its present grants expire in the year 1908; and what the city proposes, by the ordinances of 1898, is to compel the company, as respects a portion of this line, to carry at a cash fare of four cents. The right to carry at five cents over the whole line, or any portion thereof, is inconsistent with the obligation to carry for less than five cents over some portion of the through line. It is apparent that the relations between the city of Cleveland and the complainant, as the successor of the various companies out of which it has been formed, have been so far changed by subsequent ordinances and contracts and consolidation, that the reservation contained in the ordinance of 1879 relating to the Kinsman Street Railroad Company, and authorizing the council to thereafter increase or diminish the rate of fare upon such line, is not and cannot now be made operative, legally, as against the complainant company, the Cleveland City Railway Company. By reason of the various ordinances and contracts which the complainant company and its predecessors have entered into with the city of Cleveland since the ordinance of 1879, the various railroad companies assumed different and much larger obligations in the carrying of passengers than were imposed upon the Kinsman Street Railroad Company by the ordinance of 1879. In almost every instance, the company agreed to carry passengers further; and at the time of the consolidation of the Woodland Avenue and West Side Companies the service which the railway company agreed to give to the citizens desiring to ride as passengers, it may fairly be said, was doubled, and the city and its citizens received from the railway company large and valuable concessions, which concessions formed a part of the consideration for the passage of the ordinances and the making of the contracts. No other conclusion can be reached than that the relations between the city of Cleveland and the complainant, as the successor of the various companies out of which it is formed, have been so far changed by the various contracts entered into since 1879 that the city is estopped from claiming that the reservation contained in the ordinance of 1879 can now be used to either increase or diminish the rate of fare upon a small portion of the line of the Cleveland City Railway Company.

As respects the complainant the Cleveland Electric Railway Company, a very similar question is presented by the ordinances before the court. The city contends for the validity of the "Low Fare Ordinance," passed, as respects this last-named complainant, by virtue of an ordinance passed in 1879, granting a renewal of franchise to the East Cleveland Railroad Company. By this ordinance, set forth in the bill, the East Cleveland Railroad Company and its successors were authorized to reconstruct, maintain, and operate

a double-track street railroad from Superior street easterly through designated streets, including Euclid avenue, to Willson avenue; and by section 6 of said ordinance it was provided:

"Said company shall not charge more than five cents fare each way for one passenger over the whole or any part of the line herein renewed, but said company may charge a reasonable compensation for carrying packages. The council, however, reserves the right to hereafter increase or diminish the rate of fare, as it may deem justifiable and expedient."

It appears by the allegations of the bill and in proof that prior to the 15th day of September, 1879, the East Cleveland Railroad Company was operating a line of railway from the intersection of Superior and Water streets to the easterly limits of the city, on Euclid avenue, under various grants, some of which emanated from the city council, others from the county commissioners, and others from the authorities of the village of East Cleveland prior to its annexation to the city. At that time there was but a single track east of Willson avenue upon Euclid avenue, and the company, under its grants, had the right to charge passengers one fare from Water street to Willson avenue, another from Willson avenue to Fairmount street, and still another from Fairmount street east; and was, in fact, charging two fares of five cents each, each way between Water street and the city limits. This was the situation when the council passed the ordinance of September 15, 1879, containing the reservation with respect to fare, under which the city claims the right to pass and enforce the ordinance of October 17, 1898. After the passage of this ordinance, the company continued the operation of its line thereunder up to April 4, 1883, and, as it was permitted to do, charged one fare between Water street and Willson avenue, and an additional fare of five cents from Willson avenue easterly to the end of its line. On April 4, 1883, the council passed an ordinance, which was accepted by the company, granting it the right to build and operate an additional track on Euclid avenue, between Willson avenue and the easterly line of Fairmount street, making a double-track line. This ordinance contained a provision and reservation, as respects fare, in similar terms to that of the ordinance of 1879. Under this ordinance of 1883 the company agreed to carry passengers over its line as far east as the city limits for five cents. It did not make any agreement to run through cars, and for the next three years it did in fact only run a portion of its cars through. It was under no obligation to give transfers at Willson avenue, and was in fact not giving such transfers. It is alleged in the bill, and in proof by affidavit, that this arrangement and operation of the cars was unsatisfactory, both to the company and to its patrons, and in March, 1886 (see Rev. Ord. p. 826), the council passed an ordinance entitled "An ordinance granting to the East Cleveland Railroad Company the right to extend and operate its double-track street railroad on Euclid avenue between the easterly line of Fairmount street and the easterly limits of the city." By section 3 of this ordinance the company was required to pave 14 feet,—an obligation which did not pertain to its then existing contract with the city; and, by section 4 of

the ordinance, the following provision is made, as respects the rate of fare to be charged by the East Cleveland Company over its entire line, which included the line referred to in the ordinances of 1879 and 1883:

"The rights as herein granted and conferred are upon the express condition, however, that said company shall charge and collect but one fare of not more than five cents for each passenger one way in either direction, between the easterly limits of the said city on Euclid avenue and the westerly terminus of said company's tracks at the intersection of Superior and Water streets; and upon the further condition that the said company shall run through cars over said line between said points last named in each direction, as the public convenience and the opinion of the common council, by resolution expressed, may require."

Section 5 of this same ordinance provides:

"The rights herein granted to lay and operate a double-track street railroad on Euclid avenue between Fairmount street and the easterly limits of the city shall cease and determine on the 20th day of September, A. D. 1904, as provided for said company's tracks on Euclid avenue west of Fairmount street."

It is apparent from an inspection of this ordinance of 1886, in connection with admitted circumstances surrounding its passage, that the council was then fixing and agreeing upon a rate of fare to be charged upon the entire line of the East Cleveland Railroad Company, and during the entire life of the franchise, which did not expire until 1904; and nowhere in this ordinance is contained any reservation in the city council to thereafter change the rate of fare therein prescribed. It also appears in the making of this contract that the city received additional consideration, namely, the obligation of the company to pave an additional space upon the street, and the requirement for the operation of through cars. In 1883 the reservation contained in the ordinance of 1879 had been repeated, in substance, in the ordinance of that date, but in 1886, the council, for the first time, legislates or contracts upon the subject of fares to be charged in connection with the operation of through cars and a double-track street railroad, and it entirely omits the reservation contained in the former ordinances. This ordinance of 1886 was a contract, still in full force and effect. It in express terms prescribed the rate of fare which the company shall charge in the operation of its line upon Euclid avenue, and in express terms provides that the conditions and obligations of such ordinance shall remain in force until the year 1904; and it makes this obligation to so operate through cars and maintain a double-track road, and to charge but five cents fare over the entire line, continue as long as, and terminate with, the ordinance of 1879; and this ordinance of 1879, so referred to, is the ordinance in which is contained the reservation upon which the city bases its contention as to the validity of the reduction of fare attempted to be made in October, 1898. It is perfectly apparent that it could not have been in the minds of the parties contracting that the reservation of the right to regulate fare in the ordinance of 1879 could be operative after the express contract in relation to fare for the entire period of the grant, as made by the ordinance of 1886.

Again, the council having, in the ordinance of 1879, reserved the right to thereafter increase or diminish the rate of fare, did, in 1886,

in the making of this contract, fix the rate of fare at five cents, to extend from the passage of the ordinance up to the expiration of the grant made in 1879; so that it may perhaps be fairly said that the ordinance of 1886 was an exercise of the reserved right of regulation contained in the ordinance of 1879. But, whether it be treated as an exercise of such right, or as the entering into of a new contract, it is plain that, after the passage and acceptance of the ordinance of 1886, there no longer remains in the city council a right to increase or diminish the rate of fare to be charged upon that line until the expiration of the grant of 1886, to wit, the year 1904. Again, in 1888, an ordinance was passed granting the East Cleveland Railroad Company the right to construct and operate its road by electricity on Euclid and Cedar avenues. In this ordinance, it is recited:

"Whereas, there is a desire on the part of the people residing in the easterly portion of the city for a more convenient and rapid mode of transit, and that an electric system be substituted for animal power for the movement of cars: therefore, the East Cleveland Railroad Company is hereby granted permission," etc.

And in section 6 of the ordinance it is provided:

"Nothing herein shall be so construed as to authorize any increase of present fare for transportation over any portion of said company's line."

It appears in evidence that the company, having accepted this ordinance, at the expense of a very large amount of money, changed its construction as contemplated, and continued, after electricity was put in, to operate without any increase of fare. It is apparent that the "present fare" referred to in the ordinance of 1888 must have had reference to the fare which the company was then charging, and as fixed in the ordinance of 1886, namely, a cash fare of five cents. In consideration of the company's so equipping its line with electricity, and so agreeing to carry at "present fare," this same ordinance granted an extension of franchise for 25 years from July 13, 1888. By virtue of this ordinance, read in connection with the ordinance of 1886, the company acquired thereby the right to operate its line for a period of 25 years from that date, at the then present rate of fare referred to in the ordinance, namely, a cash fare of five cents. In 1889, an ordinance was passed, granting the East Cleveland Railroad Company the right to construct what is known as the "Wade Park Avenue Line," and, by section 4 of this ordinance, it is provided:

"Permission is granted upon the express condition that no increase of fare shall be charged by said company on any part of its main line or said extension, and but one fare, not exceeding five cents, or one of said company's tickets, shall entitle a passenger to transportation over the main line and extension from the intersection of Lake and Water streets to the easterly limits of the city, or from the easterly limits of the city to the intersection of Lake and Water streets."

This provision as to fare covers a portion of the Euclid Avenue Line, with respect to which it is claimed by the city that a reserved right exists to regulate fares under the ordinance of 1879; but the council, as in the ordinance of 1886, specifies the fare to be five cents, and, upon this Wade Park Avenue Line, from Superior and Water streets to Case avenue, there could be no longer any right to reduce

fare, as the extension is made upon the condition that the company will thereafter carry over the entire Wade Park Avenue Line at a cash fare of five cents or a railroad company's ticket.

Prior to June 1, 1893, the Broadway & Newburgh Street Railroad Company, the Brooklyn Street Railroad Company and the South Side Street-Railroad Company were corporations operating independent lines of railway in the city of Cleveland, each of them operating under contracts or grants from the city, and charging, as authorized in the ordinances permitting their operation, a cash fare of five cents. As to no one of these companies was there any right remaining in the city council to increase or diminish the rate of fare during the period of the several grants. These companies, about June 1, 1893, consolidated with the East Cleveland Railroad Company, forming the complainant the Cleveland Electric Railway Company. The city council consented to the terms of such consolidation under the following terms and conditions:

"Only one fare shall be charged for a continuous ride on or over any line of railway formerly owned by said constituent companies, and any line of any other of the said constituent companies within the limits of the city of Cleveland; and passengers on any of such lines paying one fare shall be entitled, without additional or extra charge, to be transferred to any other of said lines, and have a continuous ride thereon, for said single fare."

But it is evident that the one fare here mentioned must have reference to the present fare then charged by the constituent companies, namely, a fare of five cents. It thus appears that, by virtue of the ordinance of 1886 the East Cleveland Railroad Company was authorized to operate its line and cars to the end of its term at a cash fare of five cents; that each of the constituent companies which formed the present complainant the Cleveland Electric Railway Company was also authorized, for a period of time which has not yet expired, to charge a cash fare of five cents; that these different lines have been merged by consolidation; and that, under the consolidation, the system is being operated as an entirety. The portion of the Euclid Avenue Line to which the reservation of the ordinance of 1879 had reference, as an independent line, has long since ceased to be such, and the relations of the consolidated company (the complainant) and the city under these various grants are so fixed as that to admit the reserved power of regulation in the ordinance of 1879 to now operative would be to impair the obligations of the several subsequent contracts in which the rate of fare is definitely fixed without reservation. Also, as pointed out in the discussion of the question as to the other complainant, as a matter of practical railroad operation, it is difficult to see how the conferred rights of the parties could be worked out if effect is given to the alleged reserved power in the ordinance of 1879.

It is contended by counsel for the city that certain of the provisions as to rates of fare, claimed to constitute a new contract since the passage of the ordinance of 1879, are invalid, because in violation of section 2502 of the Revised Statutes, providing that, after a grant or renewal of a grant is made, the municipal corporation shall not, during the term of such grant or renewal, release the gran-

tee from any obligation or liability imposed by the terms of such grant or renewal. It is questionable whether the right reserved to the city council to thereafter increase or diminish fare can fairly be said to be either an obligation or a liability of the railroad company within the meaning of this prohibition of the statutes; but, expressing no opinion on that subject, it is not true that the provisions of the section prohibit the city, after making an agreement or grant or renewal of a grant containing sundry provisions as to the rates of fare, from thereafter, upon sufficient consideration, modifying such contract. This has been expressly held in the case of Clement v. City of Cincinnati, 16 Wkly. Law Bul. 355, and affirmed by the supreme court of the state in 19 Wkly. Law Bul. 74. The court there held:

"The modification of a contract between the city and the owner of a street-railroad route, made in good faith for the better accommodation of the public, is not void by virtue of section 2502 of the Revised Statutes, and the release of the grantee of such route from an obligation, although in consideration of more rapid transit, involving greater expense and higher rate of fare, is permitted."

See, also, Woodson v. Murdock, 22 Wall. 351; City of Cincinnati v. Cincinnati St. Ry. Co., 31 Wkly. Law Bul. 308; Id., 2 Ohio N. P. 298; also State v. East Cleveland R. Co., 6 Ohio Cir. Ct. R. 318, affirmed by supreme court in 27 Wkly. Law Bul. 64. For nearly 20 years, as the result of municipal legislation, sometimes hostile, sometimes friendly, the rights and privileges of the public and the different street-railroad companies of this city have been gradually molded into a well-defined code of street-railway laws, every step of which has been stubbornly contended for by the respective parties to these suits. Conceding to each party all the rights and privileges won by this agitation, the court is convinced, after a thorough and painstaking investigation of all the ordinances, grants, and evidence, that the complainants are entitled to the relief for which they pray in their bills of complaint, granting them a temporary injunction. The court thinks it must be clear to every fair-minded person, from the findings of fact filed with this opinion, that to permit the ordinances of October, 1898, to be put into operation by the municipal authorities would clearly impair the present contract rights of the complainants, for which no adequate remedy exists at law.

The second contention of the complainants is that the ordinances in question prescribe a rate of fare so unreasonably low as to deprive the complainants of their property without due process of law. In support of this contention, a large volume of testimony in the shape of affidavits has been filed by the defendant and the complainants. On the part of the complainants these affidavits are offered to establish their contention that, taking into consideration the value of their railway systems, cost of construction, maintenance, and operation, they could not carry passengers at the reduced rate proposed without loss, and that this loss would be so great as that, in time, it would deprive them of their property without due process of law. The court has examined these affidavits sufficiently to see that it would involve a laborious and expert accounting to decide this contention; and, having reached a conclusion on the first contention of the complainants, that the ordinances are invalid for the

reasons hereinbefore stated, it is not necessary, for the purposes of this motion, to make any further examination of that claim.

It is, however, due the complainants to say that their testimony makes out a prima facie case, within the ruling announced in Smyth v. Ames, where the supreme court held:

"A state enactment or regulation made under the authority of a state enactment, establishing a rate for the transportation of persons or property by a railroad, that will not admit of the carrier earning such compensation as, under all the circumstances, is just to it and to the public, would deprive such carrier of its property without due process of law, and deny to it the equal protection of the laws, and would therefore be repugnant to the fourteenth amendment to the constitution of the United States."

A preliminary injunction will issue, to remain in force until the final hearing of the cause, or until the further order of the court. Counsel will proceed to take their testimony for the final hearing, and the 90 days allowed by equity rule 69 will be apportioned between the parties.