### LANGMADE v. OLEAN BREWING CO.

(Supreme Court, Appellate Division, Fourth Department. February 2, 1910.)

1. MASTER AND SERVANT (§ 70*)—COMPENSATION OF EMPLOYÉ—CONSTRUCTION AND OPERATION OF CONTRACT.

Where it is agreed that, when an employé became a member of a union, His employer's contract with the union would regulate compensation, such contract could probably be read into the agreement with him; but it would not prevent an independent contract disregarding it.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 83; Dec. Dig. § 70.*]

2. MASTER AND SERVANT (§ 80*)—COMPENSATION FOR OVERTIME—EVIDENCE OF CONTRACT.

Evidence held to show an agreement with an employé for a straight weekly compensation, with no pay for overtime, independent of his employer's agreement with the union to which he belonged, under which members were to be paid for overtime so that he could not claim compensation for overtime.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 119; Dec. Dig. § 80.*]

Appeal from Cattaraugus County Court.

Action in Justice Court by Earl Langmade against the Olean Brewing Company. From a judgment for plaintiff, defendant appealed to the County Court. Plaintiff again recovered, and defendant again appeals. Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

M. B. Jewell, for appellant.

· Dana L. Jewell, for respondent.

SPRING, J. The defendant is a corporation carrying on a brewery in the city of Olean, and in the year 1908 the plaintiff was in its employ as a teamster. When he began work in April of that year he drove his own horse and received $2.50 per day. He testified that during this employment an arrangement was made between him and the president and secretary of the defendant to. the effect that when horses of its own were used in the business and he became a member

of the Olean branch of the International Union of United Brewery Workmen of America the defendant's contract with that organization would regulate the compensation of the plaintiff. It appears that a written agreement had been entered into by the union and the defendant, to become operative on the 1st of March, 1908, by which the defendant agreed to employ "only members in good standing" in said Olean branch, and was to pay beer drivers $15 a week and for overtime, nine hours a day, "to be paid at the rate of time and a half."

In the month of May the plaintiff became a member of the Olean branch of this union, and about the middle of June he commenced driving on a beer wagon a horse of the defendant, and continued in that employment until he was laid off in January following for the reason that the business of the defendant did not justify his retention. He was paid $15 each week for his services, signing a receipt therefor up[o]n each payment, and if nothing else appeared there would not be [an]y basis for the claim of the plaintiff. The evidence shows that he [wor]ked overtime, and he testified that he kept close track of this [ex]tra work day by day, and presented an itemized statement upon the [tr]ial, showing that it amounted during the year to 251 hours, and he [h]as commenced this action to recover for such overtime services. He [t]estified that at several times he made claims to the officers of the defendant for compensation for this extra work, as stipulated in the agreement referred to with the union. He testified, also, that he first made a charge for overtime to Mr. Homer, the secretary, and the latter said to him:

"'Now,' he says, 'we will have to bring that about. I don't keep the time, Habberstrumpf keeps the time.' I says: 'The contract calls for overtime, and the contract was to take effect when I commenced to drive your rigs, and I think I am entitled to what the contract calls for.' Q. What did he say? A. He said he would have to see. He didn't keep the time."

He also made a like claim to Mr. Habberstrumpf, who was the brewmaster of the defendant and kept the time of the men; but Habberstrumpf did not recognize the claim, telling the plaintiff, if he was not satisfied with the $15 a week, he would give him a job in the bottling works.

Mr. Sigel, the president, Mr. Homer, the secretary, and the brewmaster, deny specifically that there was any promise ever given to the plaintiff to pay him more than $15 per week. The president testified that the beer drivers employed by a rival brewery in the city received only $12 per week, and that company had also signed an agreement with the union of like import to the one entered into by the defendant; further, that the defendant was willing to employ the plaintiff in the bottling works, but would not pay him more than $15 per week as teamster and nothing for overtime. The secretary and Habberstrumpf agree substantially with Sigel, the president. They were all present once or twice when the subject was discussed with the plaintiff, and at other times when the president was not present, and the effect of their testimony is that the claim was repudiated whenever considered. The secretary testified, also, that he told the plaintiff whenever the subject came up that if he did not wish to work for $15

per week he could quit, and notwithstanding this statement the plaintiff kept on working and signing the receipts. The president testified that he said to the plaintiff, if he continued to work "it will be with the distinct understanding that there will be no overtime due him. He got up and went out," and nothing further was said on the subject until after the employment was terminated in January.

These witnesses are strongly supported by the fact that during all the time of the service of the plaintiff he accepted the $15 per week, signing vouchers for the same, and no action was taken by him to collect for overtime until he was discharged by the defendant. Such a course is unusual, and, ordinarily, would suffice to defeat his claim. McCarthy v. Mayor, 96 N. Y. 1, 48 Am. Rep. 601. Again, the plaintiff testified on his cross-examination that after he was laid off in January he spoke to Mr. Sigel on the subject, saying, "It looked funny my being laid off, the oldest driver, after putting in overtime all summer," indicating that he was not expecting pay for such over The putting in of extra time would be no inducement for his contin employment when business was dull, if he was to be paid for t extra time.

It is probably true that the contract entered into by the defendan with the union can be read into the agreement with the plaintiff. Key saw v. Dotterweich Brewing Co., 121 App. Div. 58, 105 N. Y. Supp. 562. The existence of that agreement, however, did not prevent the parties to this action from regulating the compensation to be paid to the plaintiff. They could make an independent agreement, disregarding the one with the union; and they did that, if we are to give credence to the great preponderance of the testimony. I think the judgment is against the weight of the evidence, and for that reason should be reversed.

Judgment of the County Court and of the Justice Court reversed, with costs to appellant in this court and in the courts below. All concur.