**INDIVIDUAL DAMP WASH LAUNDRY CO v MEYERS et**

Ohio Common Pleas, Hamilton Co

Decided Feb 28, 1938

Peck, Shaffer & Williams, Cincinnati, for plaintiff.

Thorndyke & Becker, Cincinnati, for defendant, Earl Meyers.

**OPINION**

By ROUDEBUSH, J.

This matter comes before the court on an application for temporary injunction.

The amended petition states that the plaintiff is a corporation engaged in the business of laundrying clothes and linens and that the defendant is an individual and former employee of the plaintiff and that on the 29th day of July, 1926, the plaintiff entered into a contract of employment with the defendant as follows:

"Agreement made this 29th day of July, 1926, by and between The Individual Damp Wash Laundry Company, a corporaion organized under the laws of Ohio, its successors and assigns, hereinafter referred to as the employer, and Earl Meyers hereinafter called the employee. In consideration of the employment of said employee by the said employer and the payment of weekly compensation in such sum as is now or hereafter may be agreed upon, in writing or orally, by both parties to this agreement, the said employee accepts such employ-

ment upon the following terms and conditions:

"1. That he will act as laundry solicitor, collector and deliveryman.

"2. That he will devote his entire time and best effort to said employment and promptly carry out all orders of said employer.

"3. That he will save said employer harmless from all loss occasioned by his neglect or failure to comply with the orders of said employer.

"4. That he will promptly account to said employer for all moneys and goods to him entrusted in the course of his employment by either his employer or any customer of said employer.

"5. That he will keep secret and not divulge to any person, firm or corporation, except by express order of his employer, the names, addresses, or any information concerning any customers of the said employer during said employment and for one (1) year thereafter.

"6. That he will not do himself nor consent or permit anyone else to do, any act or thing prejudicial or injurious to the business or good will of said employer during said employment and for one (1) year thereafter.

"7. That said employee will not directly or indirectly, either as principal, agent, employee or in any other capacity, for the term of one (1) year after any termination of said employment, enter or engage in any branch of the laundry business which involves any customers of said employer with whom said employee has at any time had any dealings on behalf of said employer under this contract.

"8. That he will not allow any person or persons to accompany him while traversing the routes to which he is assigned, without the express permission of said employer.

"9. That said employment may be terminated by either party only after one week's notice in writing.

"10. That he hereby consents that an order, either permanent or temporary, may be made in any suit in equity brought for the purpose of enjoining him from violating any of the provisions of this agreement, or any other action at law which by advice of counsel, said employer may take to enforce his rights under this contract.

"In witness whereof, the said parties to this agreement have signed the same in duplicate at Cincinnati, Ohio, on the day above written.

"The Individual Damp Wash Laundry Co.
"Witnesses: Per C. A. Petty,
"Wm. E. Petty, Its President.
"Geo. E. Petty Earl Meyers,
Employee;"

that on the 6th day of October, 1937, the plaintiff sent a written notice to the defendant notifying him that after one week from date thereof plaintiff would no longer be able to employ him; that, thereafter, beginning on or about the 12th day of January, 1938, said defendant, Earl Meyers, in violation of the terms of said contract solicited customers of the plaintiff and now threatens to continue to so solicit and unless enjoined as hereinafter prayed will continue to so solicit to the irreparable damage of the plaintiff.

The evidence shows that the defendant, Earl Meyers, came to work for the plaintiff as an inside worker in June, 1925, and that he signed the contract set forth above on the 29th of July, 1926, when he obtained employment from the plaintiff as a route man; that shortly thereafter the president of the plaintiff company notified defendant that he must join the union within thirty days of starting in his new position as a route man; that on the first day of August, 1926, defendant signed a written application to join the union and was initiated a member of the union in October, 1926; that at the time defendant joined the union, the Federation of Laundry Association of Greater Cincinnati had an agreement with the union, which agreement was renewed each two years and hereinafter referred to as union agreement, the last agreement being effective July 1, 1937, and being in force at the time of the filing of the amended petition herein; that defendant on or about the 12th day of January, 1937, commenced to solicit customers of the plaintiff with whom he had had dealings on behalf of the plaintiff during said employment, which date was the ninety-first day after his discharge by plaintiff.

The defendant contends that said agreement of July 29, 1926, seeking to prevent defendant from "directly or indirectly, either as principal, agent, employee or in any other capacity, for the term of one (1) year after any termination of said employment, enter or engage in any branch of the laundry business which involves any customers of said employer" is unconscionable and unfair and in restraint of trade.

Since the contract does not prevent defendant from entering into the laundry business for a long term of years, or in any

extensive territory, but only █ limits defendant's operation to the former customers with whom said employee had dealings on behalf of the employer for a term of one year, said contract is not unreasonable or against public policy. **Red Star Yeast & Products Co. v Hague, 25 Oh Ap, p. 100; White Baking Company v Snell, 28 O.N.P. (N.S.) 172.** Said contract not being so severe as to be unconscionable, the restraining order prayed for herein should be granted unless the union agreement signed and effective July 1, 1937, supersedes or modifies said contract of July 29, 1926. The parts of said contract, pertinent to the issue herein, are as follows:

"Laundry and Linen Supply Drivers' Union, Local No. 181.

"Between The Federation of Laundry Owners Association of Greater Cincinnati acting for its members, party of the first part, hereinafter called the employer, and the Laundry and Linen Supply Drivers' Union, Local No. 181, I. B. of T. C., and H., of A., party of the second part, hereafter called the Union.

"WITNESSETH: That whereas both parties are desirous of preventing strikes and lock-outs and of maintaining a uniform wage scale, working hours and conditions among the members of the union, and concerns, individual and corporations employing laundry drivers and others in like employment and occupation, and to facilitate peaceful adjustment of all grievances which may arise from time to time between the employer and his individual employees:

"ARTICLE I. The employment and discharge of drivers or route men and stable men shall be at the sole discretion of the employee, without the approval or interference in any manner by the union, its officers or representatives, provided said employees shall become members of the union within thirty days after day of employment.

"ARTICLE II. The union agrees to expel any member for just and sufficient cause when proof of same is submitted to the trial board of the union and passed upon by such trial board according to the by-laws of the union.

"ARTICLE IX. All drivers shall give the employer one week's notice before quitting his employment. The employer shall also give driver one week's notice previous to his discharge, unless discharged for dishonesty, intoxication, or gross neglect of duty.

"Drivers calling for and delivering work known as 'private trade' shall not for a period of ninety (90) days after the termination, for any reason, of employment by any laundry owner, solicit or receive any laundry work within the route or routes operated by him for the account of his former employer within ninety (90) days prior to said termination of employment.

"This agreement shall go into effect on July 1, 1937, and shall continue in full force and effect for two (2) years from date."

Ohio courts from the earliest time have recognized the principle that a written contract may be abandoned, █ waived, superseded, modified or annulled by a later contract, even though the later contract be oral. **Thurston v Ludwig, 6 Oh St 1; Rutherford v Brachman, 40 Oh St 604; Sprecher v Dwyer, 8th Dist, 5 Oh Ap 52; Jarmusch v Otis Iron & Steel Co., 3 C.C. (N.S.) 1.** A fortiori, the same would be true, if the second contract were written. **Cleveland City Ry. Co. v City of Cleveland, 12 Ohio Fed. Dec. 635, Syl. 4:**

"Where parties, having entered into a written contract, thereafter make a second contract relating to the same subject, to the extent that the provisions of the second are inconsistent with those of the first, the last contract measures the obligations of the parties."

Judge Ricks, on page 651, says:

"It, therefore, becomes necessary to inquire how far, if at all, the contract rights of the parties have been changed by these subsequent ordinances. The general principles to be followed in such an examination are well settled. In **United States v Tynen, 78 U. S. (11 Wall.) 92,** the rule is stated as follows:

" 'Where there are two acts on the same subject, the rule is to give effect to both, if possible, but, if the two are repugnant in any of their provisions, the latter act, without any repealing clause, operates, to the extent of the repugnancy, as a repeal of the first; and, even where two acts are not, in express terms, repugnant, yet if the latter act covers the whole subject of the first, and embraces new provisions, plainly showing that it was intended as a substitute for the first act, it will operate as a repeal of that act.' See also **District of Columbia v Hutton, 143 U. S. 18 (12 Sup. Ct. 309); United States v Claflin, 97 U. S. 546.**

"And again, where parties, having entered into a written contract, thereafter make a second contract relating to the same subject, to the extent that the provisions of the second contract are inconsistent with those of the first, the last contract, and not the first, measures the obligations of the parties. In 5 Lawson, Rights, Tem. & Prac., §§2569, 2570, the rule is stated as follows:

" 'One written contract, complete in itself, will be conclusively presumed to supersede another. one made prior thereto in relation to the same subject matter. The rescission may be implied in some cases. Thus, if an agreement be made between the same parties containing the same matter, in which the terms of the latter are inconsistent with those of the former, so that they cannot subsist together, the latter will be construed to discharge the former.' See also, Chrisman v Hodges, 75 Mo. 413; Hargrave v Conroy, 19 N. J. Eq. 281; McDonough v Kane, 75 Ind. 181; Howard v Railroad Co., 1 Gill. 311."

**9 Ohio Jur., §288:**
. "A waiver of any of the terms of the contract may be either by subsequent contracts, written or oral, or by the acts and conduct of the parties. A waiver may· be express or implied from conduct."

The provision in the union agreement sets forth in Article IX that the drivers will not solicit any laundry work within the route or routes operated by him on account of his former employer for a period of ninety days after the termination of the employment is clearly in conflict with Article 7 of the contract of July 29, 1926, providing that the "employee for one year after any termination shall not engage in any branch of the laundry business which involves any customers of his former employer." If the later contract were an individual contract between The Individual Damp Wash Laundry Company, the plaintiff, and Earl Meyers, the defendant, such later agreement would supersede the former contract. It is undisputed that the defendant did not solicit until the ninety-first day. •

Plaintiff contends that this later union agreement could not supersede, waive, annul or effect the contract of July 29, 1926, as it is not between the same parties, citing 13 C.J., page 603:

"One contract supersedes another if between same parties and the terms of the latter are so inconsistent with those of the former so that they can not subsist together, the latter will be construed to discharge the former.

"But where it is claimed that by reason of inconsistency between the terms of a new agreement and those of the old the old one is discharged, the fact that such was the intention of the parties must clearly appear. Where the contracts may stand together a subsequent will not supersede a prior one."

Defendant answers that the union agreement and the agreement of July 9, 1926, are between the same parties and that the union agreement supersedes the former contract. **Here then is the real issue in the case.** Is the union agreement inconsistent with the former agreement? Does it su- , persede it so that a court of equity should refuse to grant a temporary injunction which otherwise should be granted, as set forth above? Who are the parties to the union agreement?

The early American common law, following the English common law, held the formation of a trade union by individuals for the purpose of raising their own wages, or bettering their own conditions to be indictable as a criminal conspiracy. In 1806 the bootmakers of Philadelphia were convicted of criminal conspiracy. The overt act was a strike to obtain higher wages. Documental History of the American Industrial Society, p. 39, the case of the Philadelphia Cord Wainers.

The changing of economic conditions brought about recognition from the courts that the individual workman should have the right to organize for the purpose of collective bargaining. The principle has been stated by Chief Justice Taft in American Steel Foundries v Tri-City Central Trade Council, 257 U. S. 184:

"They (unions) have long been thus recognized by the courts. They were organized out of the necessities of the situation. A single employee was helpless in dealing with an employer. He was dependent ordinarily on his daily wage for the maintenance of himself and family. If the employer refused to pay him the wages that he thought fair, he was nevertheless unable to leave the employ and to resist arbitrary and unfair treatment. Union was essential to give laborers opportunity to deal on equality with their employer. They united to exert influence upon him and to leave him in a body, in order, by this inconveni-

ence, to induce him to make better terms with them. They were withholding their labor of economic value to make him pay what they thought it was worth. The right to combine for such a lawful purpose has, in many years, not been denied by any court. The strike became a lawful instrument in a lawful economic struggle or competition between employer and employees, as to the share or division between them of the joint product of labor and capital."

The Federation of Laundry Owners Association of Greater Cincinnati (representing the individual laundry owners, including the plaintiff) and the Laundry and Linen Supply Drivers' Union, Local No. 181, (representing employees and members of said union) recognizing the validity of collective bargaining agreements entered into the "Articles of Agreement under date of July 1, 1937," heretofore referred to as union agreement.

The Federation of Laundry Owners Association of Greater Cincinnati, and the Laundry and Linen Supply Drivers Local No. 181, I. B. of T. C. and H. A., are the formal parties to said union agreement, but are not The Individual Damp Wash Laundry Company and union members (employees of The Individual Damp Wash Laundry Company) including Earl Meyers, the real parties? Have not our courts in recent decisions so regarded them in interpreting collective labor agreements?

An employee, though not a formal "party" may recover any differential between wages provided in the agreement and those actually paid him. **H. Blum v Landau, 23 Oh Ap 426, syl. 8:**

"Contract between manufacturers' association and employees' union, for benefit of employees of members of association, may be enforced by employee, though employee's name did not appear in contract."

On page 437, Judge Sullivan says:

"It may be said that the plaintiff below, Rose Landau, was not a party to the agreement and, therefore, that she could not claim under this principle. While formerly it was necessary to have the person for whose benefit the contract was made a party thereto, yet the great weight of later decision is to the effect that where the name of the third party does not appear to the contract, if the terms are made for the benefit of such person, the provisions of the contract are enforceable, if they are otherwise meritorious, in a legal sense.

"It clearly appears in the record of this case that Rose Landau was an employee of the defendant below, and that the membership of Blum & Co., in the association which made the contract with the union was for the purpose of producing a contract which was for her benefit as well as the benefit of her co-employees. That such a contract is valid and enforceable is supported by unquestioned authority. Our own court, in **Cleveland Railway Co. v Heller, 15 Oh Ap 346,** lays down this rule, and we think the doctrine applies in this case as to the force and validity of the contract at bar."

Yazoo & M. V. R. Co. v Sideboard, 161 Miss., 4, Syl. 3.

"Third party may recover directly on contract to which he is not party (1) when the terms of the contract are expressly broad enough to include third party either by name as one of a specified class, and (2) the third party was evidently within the intent of the terms so used, the third party will be within its benefits, if (3) the promisee had, in fact, a substantial and articulate interest in the welfare of the third party in respect to the subject of the contract."

Judge Griffith on page 13 says:

"From the time two hundred years ago, when in England labor unions were held to be criminal conspiracies, on down even to a recent period, the struggles of these unions for full recognition in the law upon a favorable basis has been somewhat arduous and beset with obstacles. The time has at last arrived, however, when, under patriotic and intelligent leadership, their place has become secure in the confidence of the country, and their contracts are no longer construed with hesitancy or strictness, but are accorded the same liberality, and receive the same benefits of the application of the principles of the modern law, bestowed upon other agreements which appertain to the important affairs of life. So that, although only a few years ago the courts were holding that an individual member of a labor union could not maintain an action for the breach of an agreement between an employer and the union of which the plaintiff was a member in respect to wages and other rights fixed in the contract. Hudson v Cincinnati, etc., Rd. Co., 152 Ky. 711, 154 SW 47, 45 L. R.A. (N. S) 184, Ann Cas. 1915B, 98; West v Balti-

more & O. Rd. Co., 103 W. Va., 417, 137 SE 654; Burnetta v Marceline Coal Co., 180 Mo. 241, 79 SW 136, these rulings have been left in the rear in the advancement of the law on this general subject, and the holdings now are that these agreements are primarily for the individual benefit of the members of the organization, and that the rights secured by these contracts are the individual rights of the individual members of the union, and may be enforced directly by the individual. Piercy v Louisville & N. Ry. Co., 198 Ky. 477, 248 SW 1042, 33 A.L.R. 322; Gulla v Barton, 164 App. Div. 293, 149 N. Y. S. 952; Cross Mountain Coal Co. v Ault, 157 Tenn. 461, 9 SW (2d) 692."

To the same effect see Ahlquist v Alaska Portland Packers' Assn., 39 F. (2d) 348; Glicman v Barker Painting Co., 227 App. Div. 585.

An employee may recover damages for violation of a seniority right. Rentschler v Missouri Pac. Ry. Co., 126 Neb. 493; for wrongful discharge. Gary v Central of Ga. Ry., 37 Ga. App. 744; Hall v St. Louis-San Francisco Ry., 224 Mo. App. 431.

Recent decisions have recognized that employees covered by union agreements are the real parties though not "formal parties" in refusing to permit a suit until they have exhausted methods of settlement if the agreement provides for arbitration machinery. Harris v Missouri Pac. Rd., 1 F Supp. 946 Aulich v Craigmyle, 248 Ky. 676.

Also our own Court of Appeals on February 7, 1938, in the case of Amos M McClees v Grand International Brotherhood of Locomotive Engineers, No. 5322, refused to permit a member of a union to sue his union on the ground that he is in effect suing himself. On pages 6 and 7 of the original opinion, Judge Ross says:

"It is contended that as it appears from the amended petition of the plaintiff that he is a member of the defendant organization, which he complains has failed to perform certain duties owing the membership, he is in effect suing himself. * * *

"Essentially this is a claim that all the members of the organization except the plaintiff, contracted with him (plaintiff) to perform an agreement, which obligation they have failed to carry out and that he, therefore, may sue these members for a breach of such contract. Otherwise if the suit is directed against the entire organization, he is pro tanto suing himself, as was the case in **Boone v Century Athletic Club, 49**

**Oh Ap 155, 2 O.O. 280,** where this court held adversely to such an attempt."

Courts have not hesitated to hold that a subsequent individual contract is sufficient to remove an employee from the terms of a prior collective agreement. Gulickson v Seglin Const. Co., 152 Misc. 624; Langmade v Clean Brewing Co., 137 App. Div. 355.

The precise question here involved does not appear to have been decided in any reported case. The Harvard Law Review for January, 1938, contains a valuable review of recent decisions under the title "Collective Labor Agreements," some of which decisions are analogous and helpful, and the court acknowledges indebtedness to the editors of the Harvard Law Review for assistance obtained from this up-to-date article.

Plaintiff says that even if you grant that the employer and employee are real and beneficially interested parties, there is nothing to show they intended to supersede the former contract by the union agreement. This "intention of parties must clearly appear." (13 C. J., supra), before the second contract will supersede the prior one. They say that there is nothing in the union contract, or in the evidence, to indicate that the employer acted with reference to the union agreement so as to indicate an "intention" that the later contract should supersede the former. What is the evidence on this point and what are the provisions of the union agreement relative to this issue?

The evidence shows that the defendant, Earl Meyers, who was first employed as an inside man at The Individual Damp Wash Laundry Company became a driver for the plaintiff calling for and delivering work, known as "private trade," some time in June or July, 1926, and signed the contract in question July 29, 1926; that shortly thereafter he was advised by C. A. Petty, president of the plaintiff company that he would be required to join the union within 30 days of the time he began his service as driver for the plaintiff, in accordance with the union agreement; that on August 1, 1926, Meyers made written application to the union for membership therein and was initiated a member of the union in October, 1926, and later signed a pledge card agreeing to obey the Constitution and By-Laws of the union; that Meyers worked as a union driver for the plaintiff from August 1926 to October 7, 1937, when he was discharged because of a strike of inside workers of plaintiff company; that on or

about November 29, 1937, he received the following letter from the plaintiff:

"The Individual Damp Wash Laundry Company, 17 Mercer Street, Cincinnati, Ohio.

"Nov. 29th, 1937.

"Mr. Earl Meyers,
"314 Emming St.,
"Cincinnati, O.

"Dear Sir:

"We are preparing to resume operation and hope to be able to offer you employment as a route-man under same terms and conditions contained in the agreement with the Laundry Drivers Local Union No. 181.

"If you are available and interested in resuming your employment we would appreciate hearing from you not later than Tuesday, November 30th by 4:00 P. M.

"Sincerely yours,
The Individual Laundry Co.,
Per (Signed) C. A. Petty."

that a union "closed shop" agreement was in effect August, 1926, and continuously since said date, being renewed each two years, the last and present agreement becoming effective July 1, 1937.

The union agreement provides, as set forth above, that "whereas both parties are desirous of preventing strikes, lockouts and maintaining uniform * * * conditions among the members of the union," that "the employer agrees that he will employ members of the union under the following conditions:

"ARTICLE I. The employment and discharge of drivers or route men and stable men shall be at the sole discretion of the employer, without the approval or interference in any manner by the union, its officers or representatives, provided said employees shall become members of the union within thirty days after day of employment.

"ARTICLE II. The union agrees to expel any member for just and sufficient cause when proof of same is submitted to the trial board of the union and passed upon by such trial board according to the by-laws of the union."

The by-laws of the union referred to in Article II of the union agreement provide:

"Section 55. Any member working for salary, commission or conditions other than those prescribed in the agreement that exists between the employer and the union will be subject to trial by the executive board of Local No. 181. Penalty for violation of this rule shall be, not less than five dollars ($5.00) or more than five hundred dollars ($500.00) for the first offense and suspension for the second offense."

"Section 73. Any member who works under any other agreement * * * than that provided for in the contract of agreement between the union and the various employers * * * shall be subject to fine, suspension or expulsion by the executive board of this local union."

The president of the plaintiff company notified defendant when he employed him as a driver in 1926 that he must join the union within thirty days, and he again notified the defendant Meyers on November 29, 1937, as per letter set forth above, that he would again employ him "as a route-man under the same terms and conditions contained in the agreement with the Laundry Drivers Union, Local No. 181." How then can the plaintiff say there is nothing in evidence, or in the union agreement, to indicate an "intention" that the union agreement should not supersede the former contract?

The union agreement and the by-laws of the union prohibit defendant Meyers from working under any other "agreement" or "conditions" than those set forth in the union agreement. They also prevent plaintiff (employer) from employing Meyers under any other "agreement" or "conditions."

The court is of the opinion that the union agreement did supersede the former contract, at least to such an extent that he would not be justified in granting a temporary injunction as prayed for herein.

Therefore, said application for injunction is denied.