INDEPENDENCE BANK ET AL., APPELLEES, *v.* ERIN MECHANICAL, APPELLEE, ET AL.; LAKEWOOD HOSPITAL ET AL., APPELLANTS.

(No. 53914 — Decided June 20, 1988.)

*Michael Occhionero,* for appellees Independence Bank et al.

*Michael Peterson* and *Clark B. Weaver,* for appellee Erin Mechanical.

*Cavitch, Familo & Durkin Co., L.P.A., E. John Brzytwa, Jr.* and *Kerin Lyn Kaminski,* for appellants Lakewood Hospital and city of Lakewood.

NAHRA, C.J. Lakewood Hospital and the city of Lakewood, appellants, are appealing the judgment rendered against them and in favor of Erin Mechanical ("Erin"), appellee, in the amount of $141,750.51 plus interest following a trial to the court.

On February 23, 1983, the parties entered into a contract for the installation of a fire protection sprinkler system at Lakewood Hospital. In late March 1984, Erin experienced financial difficulties and was unable to complete the contract. After walking off the job, Erin returned to remove its equipment and tools. While in the process of removal, an agent of appellant asked the Erin employees to stop until he found out what was going on. The Erin employees left and did not return for the tools and equipment. Erin then arranged for a completion contractor, and Erin permitted the completion contractor to use its manpower, papers, records, tools, equipment and

materials. The completion contractor discovered that the tools, equipment and materials were missing prior to commencing its work in April 1984. The tool boxes had been broken into, the locks on the gangboxes were cut and the gangboxes stripped, chains had been snapped and the back door to the trailer was pried open and much of the material was gone. The theft was reported to Erin and later to the police.

On June 19, 1984, Independence Bank obtained a cognovit judgment against Erin and others individually, and the court appointed a receiver for appellee. On May 20, 1985, Erin moved for leave to file a third-party complaint against appellants for the loss of its tools, equipment and materials, which was granted on May 24. Prior to answering, appellants moved to stay the trial court proceedings and demanded arbitration pursuant to the terms of the contract. The court denied appellants' motion.

Following a trial to the court, the court concluded that appellants had seized Erin's tools, equipment and material pursuant to the contract between the parties and that the seizure constituted delivery of the goods to appellants and created a mutual benefit bailment. The court found that appellants "displayed an apathetic attitude as to the security and care of Erin Mechanical's tools, equipment and material * * *,"and inferred that appellants were negligent when the goods were not returned to Erin. The court rendered judgment for Erin and appellants timely appealed.

## I

Appellants' third assigned error, which will be addressed first since it is dispositive of this appeal, is that:

"The trial court erred in denying Lakewood's motion to arbitrate the dispute between it and Erin and as a result was without jurisdiction to try the third-party complaint."

It has long been the policy of the law to favor and encourage arbitration. *Campbell* v. *Automatic Die & Products Co.* (1954), 162 Ohio St. 321, 329, 55 O.O. 195, 198, 123 N.E. 2d 401, 405. Ohio law provides that a court must stay trial proceedings to allow arbitration as follows:

"If any suit or proceeding is brought upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceedings is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the agreement * * *." R.C. 2711.02.

Because of the policy favoring arbitration, this court has opined that a clause in a contract providing for dispute resolution by arbitration should not be denied effect " 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. * * *' " *Gibbons-Grable Co.* v. *Gilbane Bldg. Co.* (1986), 34 Ohio App. 3d 170, 173, 517 N.E. 2d 559, 562 (quoting from *Siam Feather & Forest Products Co.* v. *Midwest Feather Co.* [S.D. Ohio 1980], 503 F. Supp. 239, 241, affirmed [C.A. 6, 1981], 663 F. 2d 1073). Any doubts should be resolved in favor of coverage under the contract's arbitration clause. *Id.*

The arbitration clause in this case, which is contained in Article 7, Section 7.9.1, provides, in relevant part, that:

"*All claims,* disputes and other matters in question between the Contractor and the Owner *arising out of or relating to the Contract Documents or the breach thereof* * * * shall be decided

by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining unless the parties mutually agree otherwise." (Emphasis added.)

This language is broad and clearly includes *all claims* involving the contract documents and breaches thereof.

According to Article 1, Section 1.1.1 of the parties' contract, the "Contract Documents" include the "General Conditions of the Contract for Construction." Several sections in the Conditions of the Contract pertain to the work site and the materials and equipment. For example, Article 10, Section 10.2.1, which governs the safety of persons and property, provides, in pertinent part, that:

"The Contractor shall take all reasonable precautions for the safety of, and shall provide all reasonable protection to prevent damage, injury or loss to:

"* * *

"2. All the Work and all materials and equipment to be incorporated therein, whether in storage on or off the site, under the care, custody or control of the Contractor or any of the Contractor's Subcontractors or Sub-subcontractors."

In addition, Article 11 covers insurance requirements for both the owner and the contractor. Claims for damages, including claims for damages to property because of any act or omission of the other party, is covered in Article 7, Section 7.4.1. Finally, seizure of the contractor's tools, equipment, machinery and materials is governed by Article 14, Section 14.2.1. Clearly, Erin's claim for the loss of its tools, equipment and materials at the construction site is related to the "Contract Documents or the breach thereof," whether or not Erin continued its performance of the contract afterwards, and is therefore subject to arbitration pursuant to its contract with appellants.

Appellants' motion to stay the proceedings in the trial court should have been granted. Accordingly, this assignment of error is sustained.

II

Appellants' remaining assignments of error[1] are moot. The trial

---

[1] Appellants' remaining assignments of error are that:

"Assignment of Error No. 1.

"It was error for the trial court to conclude that tools, equipment and material which were owned by appellee Erin and which were being used by it to perform construction work for appellant Lakewood were subject to a mutual benefit bailment in which Lakewood allegedly became a bailee when there was undisputed testimony that the property was stored by Erin on Lakewood's premises in locked gangboxes which were chained and locked to the premises in areas open to access by other contractors and where after Erin defaulted on its contract with Lakewood and left the job site it maintained exclusive possession and control over the keys to the locks.

"Assignment of Error No. 2

"It was error for the trial court to conclude that appellant Lakewood failed to use ordinary care to secure tools, equipment and material which were allegedly bailed to it by appellee Erin when Lakewood utilized the same degree of care as Erin used in safeguarding its property and when Erin continued to maintain exclusive control over the keys to the locks which secured the gangboxes, tools, equipment and material."

"Assignment of Error No. 4

"It was error to enter judgment against Lakewood on a third-party complaint where the third-party complaint failed to allege that Lakewood was or may be liable to Erin for Independence Bank's cognovit promissory note claim against Erin and there was no proof at trial on that issue.

"Assignment of Error No. 5

"It was error to admit into evidence as

court was without jurisdiction to consider the merits of Erin's complaint, and any decision rendered here on the merits could serve, most improperly, as an advisory opinion to a panel of arbitrators. See *Shelby Mut. Ins. Co.* v. *Langston* (Mar. 10, 1983), Cuyahoga App. No. 45220, unreported.

The judgment of the trial court is reversed, and this case is remanded for further proceedings consistent with this opinion.

*Judgment reversed
and cause remanded.*

KRUPANSKY and J.V. CORRIGAN, JJ., concur.

---

a business record a list of tools, equipment and material, and values thereof, that were allegedly bailed to appellant Lakewood where it was apparent that the list was not prepared or maintained in the ordinary course of Erin's business, but rather was prepared for use at trial from the extrajudicial statements of persons not employed by Erin and from selective reference to documents that were not offered into evidence."