CLEVELAND POLICE PATROLMEN'S ASSOCIATION, Appellant,

v.

CITY OF CLEVELAND, Appellee.

[Cite as *Cleveland Police Patrolmen's Assn. v. Cleveland* (1994), 95 Ohio App.3d 645.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 64996.

Decided May 16, 1994.

646

*Marshall & D'Angelo* and *Patrick A. D'Angelo,* for appellant.

*Duvin, Cahn & Barnard* and *Robert Duvin,* for appellee.

PATRICIA A. BLACKMON, Judge.

This is an appeal from a judgment of the Court of Common Pleas of Cuyahoga County. It is a case of first impression, and raises a unique issue for this court to decide: whether the right to arbitrate under an expired collective bargaining agreement is waived by virtue of subsequent collective bargaining agreements, when the subsequent agreements are between the same parties, for the same type of employment, but for different periods of time. The Cleveland Police Patrolmen's Association ("CPPA"), plaintiff-appellant, challenges the summary judgment of the trial court in favor of the city of Cleveland, defendant-appellee, and assigns the following error:

*"Whether the trial court committed prejudicial error when it granted appellee's motion for summary judgment and denied appellant's motion for summary judgment when it found subsequent contracts between the parties constituted a waiver of plaintiff/appellant's right to parity."*

Having reviewed the record and the legal arguments presented by both parties, we find that the assignment of error is well taken, and we reverse the decision of the trial court. The apposite facts follow.

The CPPA is the sole and exclusive bargaining unit of patrol officers employed by Cleveland's police department. The CPPA and Cleveland entered into a collective bargaining agreement for the period of January 1, 1981 through December 31, 1983. The agreement provided wage increases in 1981 and 1982, but established an eight-percent cap. Furthermore, Cleveland and all of the unions collectively agreed to limit any wage demands to a maximum increase of eight percent for the term of the agreement; this compact appears in the agreement between the CPPA and Cleveland in the form of a parity clause. The agreement provided as follows:

"Article XXIV

"Binding Arbitration of Impasse Issues

"(54) Not less than ninety (90) days before the expiration of this Memorandum of Understanding and any reopener provided herein the City and the C.P.P.A. shall begin negotiation and shall negotiate for a period of at least sixty (60) days. After sixty (60) days either party can demand final and binding arbitration, by written notice to the other, of all issues on which they are at impasse in accordance with the following procedures:

"* * * *

"Article XXVII

"Parity

"(57) The City agrees that if the present Wage and Contract offer is accepted by those Patrol Officers and employees represented by the C.P.P.A., the City will not offer nor execute a contract with any other Union representing City employees nor with any other group of City employees containing any wage increase and fringe benefit package which exceeds eight percent (8%) of their present 1980 wage base. Included as part of such package would be any automatic increase between minimum and maximum of classification of wages which is greater than that enjoyed by such group in their 1980 contract. If such offer to any other union or group exceeds eight percent (8%) but such excess is offset by savings to be realized from other concessions made by the union or group involved, such package will not be considered a violation of this agreement.

"It is expressly agreed that the C.P.P.A. has relied upon the above representation in submitting the present City offer to those employees within its jurisdiction. It is expressly agreed that the C.P.P.A. may reopen its economic package in the event the City fails to comply with its limitation of eight percent (8%) Maximum package increase (as defined in the first paragraph) to any other union or group of City employees."

The Association of Cleveland Fire Fighters, Local 93 ("Fire Fighters"), however, rejected the eight-percent pay increase limitation for 1981 and 1982. Its membership demanded a 9.6 percent wage increase, the dispute was submitted to arbitration, and the arbitrators adopted the Fire Fighters' proposed 9.6 percent wage increase. Cleveland appealed to the court of common pleas and the court affirmed the arbitration award.

Upon learning of the arbitration award, the CPPA sent a letter dated December 28, 1981, demanding parity under the terms of the Article XXVII, Paragraph 57 of the agreement. Cleveland promptly responded, stating that it was contesting the arbitration award and had not violated the parity clause. Cleveland further appealed to this court and, upon this court's affirmance of the award, *Cleveland v. Assn. of Cleveland Fire Fighters, Local 93* (1991), 73 Ohio App.3d 220, 596 N.E.2d 1086, appealed to the Supreme Court of Ohio. After the Supreme Court denied certification in October 1991, 62 Ohio St.3d 1433, 578 N.E.2d 825, Cleveland settled the claim of the Fire Fighters for $2.5 million.

In the interim between the CPPA's demand for parity and Cleveland's settlement with the Fire Fighters, Cleveland and the CPPA entered into three subsequent collective bargaining agreements. The subsequent agreements did not include parity clauses. They provided that "the parties voluntarily waive the right to demand new proposals on any subject or matter, not included herein, during the term of this Contract, even though such subject matter may not have been within the knowledge or contemplation of either or both of the parties at the time they negotiated or signed this Contract."

Following Cleveland's settlement with the Fire Fighters, the CPPA made a demand for arbitration of 1981 and 1982 wages under the parity clause of the 1981–1983 agreement. Cleveland refused to arbitrate and the CPPA filed this action in the court of common pleas, seeking enforcement of the arbitration clause under R.C. 2711.03. Both of the parties, with leave of court, moved for summary judgment. The court granted summary judgment in favor of Cleveland and issued an opinion.

The trial court held that the three subsequent agreements between the CPPA and Cleveland waived any parity rights under the 1981–1983 agreement. The court treated all four collective bargaining agreements as one agreement; the court reasoned that the failure to continue the parity clause into subsequent agreements and the waiver provision of the subsequent agreements effectively waived the right to arbitrate the parity issue under the 1981–1983 agreement. Finally, the court held that Cleveland did not violate the parity clause.

In this appeal, the CPPA assigns one error seeking the reversal of summary judgment. It argues that the right to arbitrate the parity issue vested prior to the agreement's expiration, that subsequent agreements did not expressly waive its parity rights, and that therefore the trial court erred by granting Cleveland summary judgment. This assignment has merit.

Civ.R. 56(C) sets forth the standard for reviewing motions for summary judgment. It provides:

"A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."

In this case, summary judgment involves whether arbitration may be enforced for a specific clause of a collective bargaining agreement. Under R.C. 2711.03, an aggrieved party may petition the court of common pleas to order a party to submit to arbitration under a written agreement. "If the making of the arbitration agreement or the failure to perform it is in issue, the court shall proceed summarily to the trial thereof." R.C. 2711.03. See, also, *AT & T Technologies, Inc. v. Communications Workers of Am.* (1986), 475 U.S. 643, 649, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648, 656.

The question whether the parties agreed to arbitrate is a contract matter and is clearly for the court to decide. *Id.* "The basic function of a court in ascertaining the arbitrability of a grievance is whether the claim is one supported by the collective bargaining agreement." *Internatl. Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., Loc. Union 20 v.*

*Toledo* (1988), 48 Ohio App.3d 11, 13, 548 N.E.2d 257, 260. Furthermore, an arbitration clause in a contract gives rise to a presumption that a particular provision is arbitrable unless rebutted by an express exclusion or the "most forceful evidence." *Id.* In *Independence Bank v. Erin Mechanical* (1988), 49 Ohio App.3d 17, 550 N.E.2d 198, syllabus, this court held that:

"Because Ohio policy favors arbitration, a clause in a contract providing for dispute resolution by arbitration will be judicially enforced unless the court is firmly convinced that the clause is inapplicable to the dispute in question. Any doubts will be resolved in favor of arbitration."

■ In deciding whether a dispute is arbitrable, the court should confine itself to deciding the issue of arbitrability. *Internatl. Brotherhood, supra,* 48 Ohio App.3d at 13, 548 N.E.2d at 260. However, the court may rule on the merits, *if it must,* to decide the arbitrability of an issue. *Litton Financial Printing v. Natl. Labor Relations Bd.* (1991), 501 U.S. 190, 209, 111 S.Ct. 2215, 2227, 115 L.Ed.2d 177, 199. "Although doubts should be resolved in favor of coverage, we must determine whether the parties agreed to arbitrate this dispute, and we cannot avoid that duty because it requires us to interpret a provision of a bargaining agreement." *Id.*

The first issue raised in this case is whether the fact that the dispute arose after the expiration of the contract, in and of itself, determines the arbitrability under the contract.

■ The fact that a dispute arises after the termination of the contract does not determine the arbitrability of the issue presented by that dispute. *Internatl. Brotherhood, supra,* 48 Ohio App.3d at 15, 548 N.E.2d at 261.

"A postexpiration grievance can be said to arise under the contract only where it involves facts and occurrences that arose before expiration, where an action taken after expiration infringes a right that accrued or vested under the agreement, or where, under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement." *Litton Financial Printing, supra,* 501 U.S. at 205–206, 111 S.Ct. at 2225, 115 L.Ed.2d at 196–197.

In this case, it is clear that the dispute arose before the expiration of the agreement because the CPPA clearly demanded parity prior to the expiration of the agreement. It is also clear that the right to parity accrued or vested under the agreement. At the time the Fire Fighters decided not to keep the compact, the CPPA made a demand for parity during the term of the contract and as a result their rights were vested. The fact that Cleveland refused to honor the CPPA's demands and delayed discussing parity until it exhausted its right to appeal does not alter the fact that the CPPA's rights were vested.

■ Cleveland erroneously argues that the parity clause is a "reopener clause" and therefore is valid only during the life of the contract. Reopener clauses permit parties, by mutual assent, to reopen their existing agreement in order to meet changing economic conditions during the term of the agreement. *Natl. Labor Relations Bd. v. Pratt & Whitney Air Craft Div.* (C.A.2, 1986), 789 F.2d 121, 125. Reopener clauses usually contain some language indicating their intent. *Id.*

In this case, the word "reopen" appears in the agreement, but the other language of the clause does not indicate that the purpose of the clause was to account for changing economic conditions during the term of the agreement. There is no language in this clause about changing economic conditions, nor is there language requiring mutual assent of the parties. The clause was clearly intended to protect the CPPA against any breach of the parity clause by Cleveland. Thus, it is not a "reopener clause" in the traditional sense, which would expire with the term of the contract.

■ Even if we assume that the parity clause is a reopener clause, CPPA reopened the issue when it made a demand for parity during the term of the agreement. The delay in determining whether the Fire Fighters would get a pay increase beyond eight percent was occasioned by the city's exhaustive appeals. The CPPA should not be precluded from exercising vested rights because of the delay caused by Cleveland's settling of its claims with third parties. That construction would defeat the purpose of the parity clause by giving employers the option to delay on related matters and thus avoid arbitration of the dispute altogether.

■ Cleveland also argues that because the term of the agreement has expired, the parity clause is no longer of any effect. Nonetheless, "the failure to expressly exclude from arbitration any contract disputes after termination gives rise to the presumption that a contended provision of an expired agreement is enforceable." *Internatl. Brotherhood, supra,* 48 Ohio App.3d at 14–15, 548 N.E.2d at 260–261.

■ In this case, there was no express language that excluded the parity clause from arbitration after termination, nor was there any evidence within the agreement that forcefully expressed this intention. Accordingly, we hold that the expiration of the term of the agreement did not preclude arbitration of the parity clause, because the CPPA's right to arbitrate vested when it demanded parity before the expiration of the clause.

■ The second issue raised in this case is whether the making of subsequent agreements between parties waived their parity rights. "Ohio courts from the earliest time have recognized the principle that a written contract may be

abandoned, waived, superseded, modified or annulled by a later contract * * *." *Individual Damp Wash Laundry Co. v. Meyers* (C.P.1938), 26 Ohio Law Abs. 142, 144, 10 O.O. 517, 519, 3 Ohio Supp. 69, 71 (collective bargaining agreements construed).

" '[W]here parties, having entered into a written contract, thereafter make a second contract *relating to the same subject,* to the extent that the provisions of the second contract are inconsistent with those of the first, the last contract, and not the first, measures the obligations of the parties.' " (Emphasis added). *Id.* at 145, 10 O.O. at 520, 3 Ohio Supp. at 71–72, quoting *Cleveland City Ry. Co. v. Cleveland* (N.D.Ohio 1899), 94 F. 385, 396–397. See, also, 18 Ohio Jurisprudence 3d (1980) 155, Contracts, Section 239. The critical inquiry in this case is whether the subsequent collective bargaining agreements related to the same subject and whether they were inconsistent with the first one.

The agreement in question provided for employment in 1981 and 1982. The subsequent collective bargaining agreements involved employment for subsequent periods of time. With respect to the period of employment they covered, the individual collective bargaining agreements do not relate to the same subject. Furthermore, to the extent that they involve different time periods of employment, they are not inconsistent. Therefore, the mere making of subsequent collective bargaining agreements did not necessarily resolve or foreclose disputes as to a previous agreement.

We now turn to the third issue, whether the subsequent agreements expressly waived the parity clause in the agreement in question. Cleveland relies on the provision in the subsequent agreements that "the parties voluntarily waive new proposals on any subject or matter; not included herein * * *." We find that reliance on this provision is misplaced.

"Generally, courts presume that the intent of the parties to a contract resides in the language they chose to employ in the agreement." *Shifrin v. Forest City Ent., Inc.* (1992), 64 Ohio St.3d 635, 638, 597 N.E.2d 499, 501. "Common words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." *Id.,* quoting *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 246, 7 O.O.3d 403, 406, 374 N.E.2d 146, 150. The operative language in this case is "new proposals."

"New," in the most common sense, clearly indicates something that is "different from one of the same category that has existed previously." Webster's Ninth New Collegiate Dictionary (1983) 796.

"*New.* As an element in numerous compound terms and phrases of the law, this word may denote novelty, or the condition of being previously unknown or of

recent or fresh origin, *but ordinarily it is a purely relative term and is employed in contrasting the date, origin, or character of one thing with the corresponding attributes of another thing of the same kind or class."* (Emphasis added.) Black's Law Dictionary (6 Ed.1990) 1042.

When "new" is given its ordinary meaning, it clearly expresses prospective intent, not a retroactive or retrospective intent. Accordingly, "new proposal" should be treated as prospective language.

The parity clause was not a "new proposal." While collective bargaining agreements often resolve disputes from previous agreements, that did not happen in this case. The subsequent agreements' use of the words "new proposal" clearly expressed an intention to act prospectively. Therefore, we find that the waiver provision in subsequent collective bargaining agreements did not expressly waive the CPPA's parity rights under a previous collective bargaining agreement.

The fourth issue raised in this case is whether the trial court properly addressed the merits of the claim that the parity clause was violated.

There is no dispute that a trial court may decide the merits, if it must, to decide the arbitrability of an issue. See *Litton, supra,* 501 U.S. at 209, 111 S.Ct. at 2227, 115 L.Ed.2d at 199. Where the merits need not have been addressed to determine arbitrability by the trial court, a proper question of fact is raised and should be decided in the arbitration. See *Divine Constr. Co. v. Ohio-American Water Co.* (1991), 75 Ohio App.3d 311, 599 N.E.2d 388. In this case, the trial court improperly addressed the merits of the issue for arbitration, because their review was not necessary to decide the waiver issue.

We find as a matter of law that the CPPA did not waive its right to arbitrate the parity clause under its expired collective bargaining agreement, notwithstanding the subsequent collective bargaining agreements between the CPPA and Cleveland. We further find that the parity clause question should be arbitrated according to the 1981–1983 collective bargaining agreement of the parties. Accordingly, we hold that this case is reversed and remanded for binding arbitration under R.C. 2711.03.

*Judgment reversed and cause remanded.*

NAHRA, C.J., and SPELLACY, J., concur.