**ZEBRASKY, Appellant,**

v.

**VALDES, Appellee.**

[Cite as *Zebrasky v. Valdes*, 175 Ohio App.3d 670, 2008-Ohio-1674.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 07 MA 34.

Decided March 17, 2008.

William C.H. Ramage, for appellant.

Thomas J. Wilson, for appellee.

---

DeGenaro, Presiding Judge.

{¶ 1} This timely appeal comes for consideration upon the record in the trial court, the parties' briefs, and their oral arguments before this court. Plaintiff-

appellant, Thomas Zebrasky, appeals the decision of the Mahoning County Court of Common Pleas that found that the dispute between Zebrasky and defendant-appellee, Alfonso Valdes, was not subject to the arbitration clause in the contract signed by the two parties. On appeal, Zebrasky argues that the trial court erred when reaching this conclusion because the dispute between the parties is over a change in compensation, and the contract provides that any dispute of this type is subject to arbitration.

{¶ 2} Zebrasky is correct that the trial court erred, although not in the way he describes. The contract in this case is ambiguous in two ways. First, it is not clear whether any change in compensation must be submitted to arbitration under one clause of the contract. Furthermore, it is not clear whether this subject is excepted from arbitration under another clause. Accordingly, the trial court's decision is reversed, and this cause is remanded so that these ambiguities can be resolved.

{¶ 3} On June 16, 2003, Valdes and Zebrasky entered into an operating agreement governing the management of Evergreen Land Development, Ltd. ("the L.L.C."), a limited-liability company based in Ohio. Valdes was in charge of the day-to-day management of the L.L.C., but nothing defined what duties were within the ambit of this responsibility.

{¶ 4} Three sections of the operating agreement are relevant to this appeal. Section 19 provides that almost any dispute, other than a dispute about Valdes's management of the L.L.C., is subject to arbitration. It states:

{¶ 5} "**Arbitration**—Any dispute arising out of, relating to this Agreement, a breach thereof, or the operation or business of the LLC, (except those that a party believes, in good faith, subject to an equitable remedy of temporary restraining order, preliminary injunction or specific enforcement), not related to the management of the LLC vested in ALFONSO VALDES, shall be settled by arbitration to be conducted by an arbitrator mutually chosen and agreed to by the Members, in accordance with such procedures to be agreed to by the disputing Members provided the discovery as provided for under the Ohio Rules of Civil Procedure shall be available to all parties to the arbitration."

{¶ 6} Section 4(a) defines the scope of Valdes's management authority:

{¶ 7} "**Management**—The overall control and management of the LLC and all of its affairs shall be in the members. Except as otherwise provided in this Operating Agreement, the day to day management and operations of the LLC shall vest in ALFONSO VALDES."

{¶ 8} Finally, Section 4(e) of the contract defines how Zebrasky and Valdes are to be compensated:

{¶ 9} "In consideration of the day-to-day management and operations of the LLC, ALFONSO VALDES shall receive a compensation of FOUR THOUSAND DOLLARS ($4,000.00) monthly; and THOMAS ZEBRASKY shall receive a compensation of EIGHT THOUSAND DOLLARS ($8,000.00) monthly, commencing after the execution of the construction loan. Except for the above compensation, no other compensation shall be payable to the Members of the LLC except as modified by Majority Vote of the Members."

{¶ 10} At some point, Valdes reduced the monthly compensation paid to both himself and Zebrasky, citing a lack of cash flow in the business. Zebrasky filed a petition to enforce the arbitration agreement on February 10, 2006. The issue was put before a magistrate, who concluded that the decision to reduce the compensation was outside the scope of Valdes's authority over the day-to-day management of the company and ordered the issue to arbitration. Valdes timely objected to this decision, and the trial court sustained those objections. It found that the decision to reduce compensation was within the scope of Valdes's authority as day-to-day manager of the business and, therefore, was not arbitrable.

{¶ 11} Zebrasky raises the following assignment of error on appeal:

{¶ 12} "The trial court erred in determining that the issue in dispute between the parties was not subject to the patties' agreement to arbitrate."

{¶ 13} Zebrasky argues that the contract requires that any deviation from the compensation scheme set forth in the contract be voted on by the members of the L.L.C. and, therefore, is not within the scope of Valdes's management authority. Accordingly, he believes that any deviation from the compensation set forth in the contract is subject to arbitration. Valdes believes that the contract states only that any upward deviation in compensation must be voted on by the members and that a downward deviation is within the scope of his management responsibilities. Thus, Valdes believes that the issue is not subject to arbitration.

{¶ 14} Under R.C. 2711.03, an aggrieved party may petition the court of common pleas to order a party to submit to arbitration only under a written agreement. However, the court can order a party to submit to arbitration if it finds that the parties have agreed to arbitrate the issue in dispute, and this is an issue for the court to decide. *Cleveland Police Patrolmen's Assn. v. Cleveland* (1994), 95 Ohio App.3d 645, 650, 643 N.E.2d 559. The construction of a written contract is ordinarily a matter of law that is reviewed de novo. *Saunders v. Mortensen,* 101 Ohio St.3d 86, 2004-Ohio-24, 801 N.E.2d 452, at ¶ 9.

{¶ 15} A court's primary role when construing a contract is to ascertain and give effect to the intent of the parties, and we presume that their intent is within the language they used in the written instrument. Id. If we are able to

determine the intent of the parties from the plain language of the agreement and give that language a definite legal meaning, then it is unambiguous and we must apply that meaning. *Westfield Ins. Co. v. Galatis,* 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, at ¶ 11. However, a court may consider extrinsic evidence to ascertain the parties' intent when a contract is ambiguous. Id. at ¶ 12. A factfinder must then resolve the ambiguity. Id. at ¶ 13.

{¶ 16} An arbitration clause in a contract gives rise to a presumption that a particular provision is arbitrable unless rebutted by an express exclusion or the most forceful evidence. *Cleveland Police Patrolmen's Assn.* at 651, 643 N.E.2d 559. "Because Ohio policy favors arbitration a clause in a contract providing for dispute resolution by arbitration will be judicially enforced unless the court is firmly convinced that the clause is inapplicable to the dispute in question. Any doubts will be resolved in favor of arbitration." *Independence Bank v. Erin Mechanical* (1988), 49 Ohio App.3d 17, 550 N.E.2d 198, syllabus. A court should confine itself to deciding the issue of arbitrability when deciding whether a dispute is arbitrable. *Internatl. Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., Loc. Union 20 v. Toledo* (1988), 48 Ohio App.3d 11, 13, 548 N.E.2d 257.

{¶ 17} The dispute between the parties is whether Valdes's decision to reduce the compensation paid to both him and Zebrasky falls within the scope of his management authority, which is excluded from the agreement to arbitrate.

{¶ 18} Section 4(e) of the operating agreement sets forth the monthly compensation of both Valdes and Zebrasky. It states, "Except for the above compensation, no other compensation shall be payable to the Members of the LLC except as modified by Majority Vote of the Members." Zebrasky maintains that this sentence means that *any change* in the compensation must be voted on by the members, while Valdes contends that this requires only that any compensation *in addition* to that listed in the operating agreement must be voted on by the members. Both parties argue that the operating agreement is unambiguous and should be read in their favor.

{¶ 19} After reviewing this contract, we conclude that it is not at all clear which interpretation the parties meant to adopt when they entered into the contract. First, the plain language of the words used in the contract are subject to both interpretations. The key phrase in this sentence for the purposes of this dispute is "no *other* compensation." However, the word "other" can mean both "different," which would support Zebrasky's interpretation of the Operating Agreement, and "additional," which would support Valdes's interpretation of that agreement. See Merriam–Webster Online Dictionary, http://mw1.merriam-webster.com/dictionary (February 29, 2008).

{¶ 20} Furthermore, it does not appear clear which interpretation the parties meant when this phrase is placed in context. One could reasonably read the phrase "except for the above compensation" to set a ceiling for the compensation to be paid to Valdes and Zebrasky and the rest of the sentence allowing this ceiling to be raised only upon a majority vote of the members. On the other hand, one could read the phrase to set a baseline for compensation from which any change, above or below that baseline, must be voted on by the members.

{¶ 21} Either of these interpretations would fit into the general scheme set up by the operating agreement in Section 4(a). One could argue, as Valdes does, that the authority to reduce compensation when there is insufficient cash flow should be within the scope of authority of the person charged with the day-to-day management of the company. However, this is a closely-held company, and the members may have decided that all compensation matters should be decided by all the members as a matter of overall control of the L.L.C. set forth in Section 4(a).

{¶ 22} Given these facts, the language used in this portion of the operating agreement is subject to more than one meaning and is, therefore, ambiguous. Accordingly, the trial court erred when it refused to submit the matter to arbitration without first holding a trial on the matter to determine the meaning of this portion of the contract. Thus, Zebrasky's assignment of error has merit.

{¶ 23} The contract at issue in this case does not clearly and unambiguously resolve the dispute between the parties. Its terms are subject to more than one construction, and those terms are not clarified when they are read in context. Accordingly, the trial court erred by not having a trial to resolve this ambiguity. Accordingly, the judgment of the trial court is reversed, and this cause is remanded for further proceedings in order to resolve the ambiguities and determine the intent of the parties.

Judgment reversed
and cause remanded.

DONOFRIO and VUKOVICH, JJ., concur.